JOSEPH WILLIAMSON, *Compl't, versus* BACHELDER CARLTON.

On trial upon a complaint for flowage under the statute, the complainant pro-
duced a quitclaim deed of the land flowed, without evidence of an entry or
possession by him, actual or constructive :— *Held,* that a nonsuit was errone-
ously ordered, the complainant having made out a *prima facie* case of own-
ership.

EXCEPTIONS from the ruling at *Nisi Prius* of RICE, J.

This was a COMPLAINT FOR FLOWAGE under the statute.
In support of the claim the complainant introduced, (1,) a
deed of quitclaim of the premises described in his com-
plaint, from Charles N. Cotting to him; (2,) deeds of the
same from William Sohier to Cotting; also resolves of the
State of Maine, referred to in the deeds, and the petition
referred to in said resolves; (3,) the will of Benjamin Joy
and proceedings under the same in Probate Court.

The parties agreed to substitute the following facts for
the deeds :—

1st. That Charles N. Cotting of Boston, in the county of
Suffolk, and Commonwealth of Massachusetts, on the tenth
day of December, 1858, by his deed of quitclaim of that
date, duly made, executed, acknowledged and recorded, con-
veyed to said complainant, among other parcels of land,
those described in said complaint, and that the *habendum* in
said deed is as follows :—" To have and to hold said premi-
ses, together with all and every the rights, easements, priv-
ileges and appurtenances to said premises, and any and
every part thereof belonging or used in connection there-
with, unto the said Williamson, his heirs and assigns, to his
and their use and behoof forever, but without any warranty
on my part, express or implied.   It being understood that,
in respect to many of the parcels herein described, contracts
or agreements for sales and for deeds, heretofore made by
Benjamin Joy, his heirs, devisees and assigns, and by per-
sons acting as trustees under his will, and under will of
Hannah Joy, by Hannah Joy, Adm'x, by E. Jay, Adm'x,

and by within named grantor, are held by parties who have paid the whole or a part of the purchase money, which contracts or agreements, each and every of them, said grantee for himself, his heirs and assigns, hereby assumes as his own obligations and agreements, and agrees to perform as a part consideration of these presents."

2d. That William Sohier of Boston aforesaid, on the sixteenth day of August, 1854, by his deed of quitclaim of that date, duly made, executed, acknowledged, delivered and recorded, conveyed to said Cotting, among other parcels, the parcels of land described in said complaint, and that the premises and *habendum* in said deed are as follows :—" In the exercise of the power and authority to and upon me conferred by two resolves of the Legislature of Maine, one of which is the —— chapter of the resolves of said Legislature, 1847, and the other the —— chapter of said resolves, 1852, or either of them, and of *every other power or authority* me hereunto enabling, *grant*, release, quitclaim and appoint unto said Cotting the pieces or parcels of land hereinafter mentioned, and *all my right, title and interest . therein.* It being understood that, to several of the lots heretofore referred to, no title is given, save a *title as mortgagee;* that, in respect of many of them, contracts for deeds are held by parties who have paid the whole or a portion of the purchase money. To have and to hold said premises, together with all and every the rights, easements, privileges and appurtenances to said premises, unto the said Cotting, his heirs and assigns, to his and their use and behoof forever, but without any warranty whatever on my part, express or implied."

3d. That said Sohier, on the fifteenth day of October, 1855, by his deed of quitclaim of that date, duly made, executed, acknowledged, delivered and recorded, conveyed to said Cotting, among other parcels of land, the several parcels described in said complaint; that the premises and *habendum* in said deed are the same as in the deed from said Sohier to said Cotting, dated August 16, 1854, herein-

before referred to, with the following addition:—"This deed being confirmatory of said deed to said Cotting, in which are incorrect bounds, and also to include lots unintentionally omitted."

It was admitted by respondent, in his specifications of defence, that he was the owner, at the time the complaint was filed, of the watermill and dam named in the complaint, and of the land on which they stood, and that said dam flowed the land described in the complaint.

On motion of respondent, the Court ordered a nonsuit; to which ruling the complainant excepted.

*W. G. Crosby*, argued in support of the exceptions, and

*N. Abbott, contra.*

The opinion of the Court was drawn up by

BARROWS, J.—This is a complaint for flowage under c. 92 of the Revised Statutes of 1857. The respondent pleads the general issue, but, by his brief statement, admits that he was, at the time of the filing of the complaint, and still is, the owner of the mill and dam described therein, and that the dam flowed the land described in the complaint, and he claims the right to maintain that dam and flow that land. The complainant, to entitle him to recover, must show that he was the owner of the land flowed.

A nonsuit should not be ordered if he makes out a *prima facie* case of ownership.

He presents a quitclaim deed, duly executed, acknowledged and recorded, from Charles N. Cotting to himself, covering the premises.

The respondent objects that a quitclaim deed, without evidence of an entry and possession, actual or constructive, by the grantee, is insufficient, and he cites cases where it has been rightly held that to maintain trespass *quare clausum* or assumpsit, for the proceeds of wood or other valuable products of land, of which the plaintiff being owner has been disseized, such evidence is necessary.

It may well be doubted whether these cases are applicable to the process before us. The most comprehensive terms are used in c. 92, R. S., in giving this remedy. Any person, " whose lands" are damaged, may obtain compensation. The respondent may plead in bar that the complainant has " *no* right, title or estate in the lands" alleged to be injured, but the possession requisite to support the action of trespass *quare clausum* is not indispensable to the maintenance of this process. There may be cases where the reversionary estate may suffer from the flowage. And there is nothing to indicate that the remedy is not open to an owner of land who has been disseized.

But, however these things may be, the utmost that could be required of the complainant, upon these pleadings, would be that he should make out such a title as would enable him to recover in a writ of entry. A quitclaim deed is not necessarily a mere naked release of the grantor's existing interest in the premises. It may be an actual grant of the land, differing from a warranty deed only in the covenants. A deed of conveyance duly executed, acknowledged and recorded, is equivalent to a feoffment with livery of seizin, and gives the grantee a *prima facie* title. *Blethen* v. *Dwinal,* 34 Maine, 135.

Such a deed, it would seem from the agreement of parties filed in the case, the one from Cotting to the complainant in fact was. Stopping here, then, the complainant, if nothing appeared to defeat or control his right to recover, would have been entitled to a verdict.

Has he made his case worse by the introduction of the deeds from Sohier to Cotting, and the other documentary evidence and the resolves of the Legislature? It is not shown that Cotting's title depended solely upon Sohier's deeds. His right to make a valid conveyance is not impeached by any testimony in the case, and his quitclaim deed would pass to the complainant all the estate he had in the premises, whether derived from Sohier or from other parties.

Neither does it appear that Sohier's right to convey depended solely upon the legislative resolves. He refers, in his conveyances, to other power and authority, and grants the land *and* all *his* right, title and interest in the premises. Are we to presume in the absence of all testimony that he had none? The respondent claims that we should do so, and then asks us to adjudge the resolves of the Legislature, under which alone he alleges Sohier claimed a right to convey, and upon which alone he says the title of Cotting depends, to be unconstitutional.

We think a *prima facie* case is made out, without examining the question whether or not Sohier was lawfully authorized to make the conveyances by virtue of the resolves.

But if it were conceded that Sohier had no estate in the premises, and no authority to convey except that which he derived from the resolves of the Legislature, and that Cotting's title rested solely upon those conveyances, how would the case stand?

The respondent calls upon us to exercise in his behalf the high prerogative of this Court, and to pronounce the legislative resolves unconstitutional, and the conveyances made by virtue thereof to be inoperative and void. Undoubtedly the Court has the power, in cases where the question properly arises, to pass upon the constitutionality of any legislative enactment.

The presumption always is, that the Legislature has kept within the legitimate scope of its authority, and except in cases where, upon the most careful and deliberate examination, it is *manifest* that the true limits of legislative power have been exceeded, the Act will not be pronounced void.

Where the rights of citizens have been invaded by any unwarrantable arbitrary exercise of the legislative power, it is the duty of this Court to afford the needed redress, and to declare the Act a nullity.

But at whose instance shall this be done? Plainly those whose rights were injuriously affected by the Act complained of, their representatives or assigns, and *they only* can call

upon the Court to do this. A stranger to those rights, merely interposing a cavil at the tenure by which a neighbor holds his property, cannot be permitted to do it.

If this respondent claimed under the devisees or trustees appointed under the wills of Benjamin and Hannah Joy, or under the remaindermen, referred to in the will of Benjamin, the question of the validity of the resolves might be fairly before us.

It no where appears, and it is not even suggested, that he does so claim. He claims a right to maintain his dam, and to flow that land. In order to give him an opportunity to test that right, it is necessary that the exceptions should be sustained.        *Nonsuit set aside and new trial granted.*

APPLETON, C. J., CUTTING, DAVIS, KENT and DICKERSON, JJ., concurred.