WILBER I. CRAM, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 14, 1909. No. 15,148.

1. Carriers: PLEADING. The petition examined, discussed in the opinion, and *held* to state a cause of action.

2. ———: ———. The first proviso clause in section 10606, Ann. St. 1907, construed, and *held*, the exceptions therein noted are matters of defense and need not be negatived by plaintiff.

3. Constitutional Law: PARTIES. A litigant who is not shown to have been prejudiced by the enforcement of an act of the legislature is not in position to assail such act on the ground of its being unconstitutional.

4. Statutes: PRESUMPTIONS. The legislature is presumed to know the general conditions surrounding the subject matter of legislative enactment, and it will be presumed it knows and contemplates the legal effect that accompanies the language it employs to make effective the legislative will.

REHEARING of case reported in 84 Neb. 607. *Affirmed on condition.*

DEAN, J.

Our former opinion in this case affirming the judgment of the lower court is reported in 84 Neb. 607, to which reference is had for a statement of the facts. The delayed shipment act of the legislature of 1905, under which this suit was brought, is assailed by defendant as being unconstitutional. The act upon which the attack is made also appears in our former opinion. A motion for rehearing supported by a brief in behalf of defendant has been filed, and also a reply brief by the plaintiff, and upon due consideration a reargument was ordered by the court, which has been submitted by counsel upon the following points: "(1) Does the petition state a cause of action? (2) Does the statute violate section 4, art. XI of the constitution, providing that the liability of railway corporations shall never be limited?"

The defendant argues that the burden is upon plaintiff to plead and prove every fact necessary to bring his case within the precise terms of the statute upon which his action is founded, and that the petition is fatally defective in each cause of action, and is so deficient in substance that a judgment predicated thereon cannot be sustained. That part of section 10606, Ann. St. 1907, that we are called upon to construe in order to determine the sufficiency of the petition reads as follows: "Provided, in cases where the initial point is not a division station and on all branch lines not exceeding 125 miles in length, the rate of speed shall be such that not more than one hour shall be consumed in traversing each twelve miles of the distance, including the time of stops at stations or other points, from the initial point to the first division station or over said branches. The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time required, as provided in this schedule." Defendant now argues that plaintiff must, if he would avail himself of the benefit of the statute, plead and make proof of the time consumed in picking up and

setting out, loading or unloading stock at intermediate stations between the point of shipment and the point of destination. The plaintiff contends that the time so consumed by the company in the movement of its trains is defensive matter and that the burden of proof is on the defendant. Plaintiff's several causes of action are each pleaded separately, but in language substantially alike, the only changes being those required to meet the necessary allegations as to the time and the amount of the respective shipments. Omitting the formal parts, the following is plaintiff's twenty-first count in his petition, the language whereof, defendant argues, is so deficient in its allegations that it is insufficient to sustain the judgment: "That at all of the times hereinafter mentioned, the defendant was, and now is, a corporation duly organized and existing under and by virtue of the laws of the state of Iowa, and did, and now does, own and operate a railroad between Burwell and South Omaha, in the state of Nebraska, as a public carrier of passengers and freight for hire in said state; that the defendant's said line of railroad runs through the city of Aurora, in said state, and the portion of its said railroad extending between South Omaha and Aurora was, and is, a main line 125 miles in length, and the portion of its said railroad extending between Aurora and Burwell was, and is, a branch line 104 miles in length; that on the 8th day of September, 1905, the plaintiff delivered to the defendant, and it then received, at its railroad station in Burwell, Nebraska, one full car-load of live stock belonging to plaintiff, to be safely and securely conveyed by the defendant over its said line of railroad from Burwell to South Omaha, Nebraska, within the time provided for by statute, in consideration of the regular freight charges therefor, which the plaintiff paid to the defendant; that the defendant's train conveying said car-load of live stock left Burwell for South Omaha at 9 o'clock A. M. of said day, but did not arrive at South Omaha, the point of destination, until 4:55 o'clock A. M. on September 11, 1905, and the time

consumed in said journey was 52 hours and 18 minutes longer than permitted by the statutes of Nebraska, to the damage of the plaintiff in the sum of $520, as provided for by statute."

We have carefully examined the petition, and the law applicable to the points involved, to discover if the objections raised by defendant are well taken, and we conclude the pleading is not defective in the particulars pointed out. In view of the authorities, we are of the opinion defendant's contention cannot be sustained upon any reasonable theory of statutory construction. To do so would be to read a meaning into the statute which the lawmaking power evidently did not intend, and for which the legislative language, as used in the act, gives no warrant. The rule that seems to be applicable to the present case is concisely stated in 31 Cyc. 115: "Where a party relies upon a statute which contains an exception in the enacting clause, such exception must be negatived; but where the exception occurs in a proviso or in a subsequent section of the act, such exception is matter of defense and need not be negatived." This has long been the prevailing rule, and it appears to have been almost universally followed.

In 1 Chitty, Pleading (16th Am. ed.) p. *246, the author says: "In pleading upon statutes, where there is an exception in the enacting clause, the plaintiff must show that the defendant is not within the exemption, but if there be an exception in a subsequent clause, that is matter of defense, and the other party must show it to exempt himself from the penalty." On page *247 Chitty cites Lord Tenterden to the following effect: "If an *act of parliament,* or a *private instrument,* contain in it, first, a general clause, and afterwards a separate and distinct clause, something which would otherwise be included in it, a party relying upon the general clause, in pleading may set out that clause only, without noticing the separate and distinct clause which operates as an exception. But if the exception itself be incorporated in the general

clause, then the party relying upon it must in pleading state it with the exception." In *Lynch v. People,* 16 Mich. 472, Cooley, C. J., speaking for the court says: "In pleading statutes where there is an exception in the enacting clause, the pleader must negative the exception; but when there, is no exception in the enacting clause, but an exemption in a proviso to the enacting clause or in a subsequent section of the act, it is matter of defense, and must be shown by the defendant." *Bush v. Wathen,* 104 Ky. 548, 47 S. W. 599: "When there is an exception in the enacting clause, the plaintiff must negative it. If the exception is in a subsequent clause to that giving the cause of action, then, if it gives the defendant exemption from liability, he must plead it." *Toledo, P. & W. R. Co. v. Lavery,* 71 Ill. 522: "Where a plaintiff relies upon a statute for a recovery, he need only to negative the exceptions in the enacting clause, and it is for the defendant to show, by way of defense, that the case falls within an exception in some other clause of the statute." *Harris v. White,* 81 N. Y. 532: "Where an exception is contained in the enacting clause of a prohibitory statute, one who pleads the statute must negative the exception, and must prove the negative unless the subject matter of the negative and the means of proof are peculiarly within the knowledge and power of the opposite party, or where the negative does not admit of direct proof." *Muller v. United States,* 4 Ct. Cl. 61: "When the enacting clause of a statute makes an exception to the general provisions of the act, a party pleading the provisions of the statute must negative the exception. But when the exception is contained in a proviso, and not in the enacting clause, the party pleading the statute need not negative the exception. It is for the other party to set it up in avoidance of the general provisions of the statute." To substantially the same effect are the following: *Vandegrift v. Meihle,* 66 N. J. Law, 92; 1 Bates, Pleading, Practice, Parties and Forms, p. 225; *Fairbault v. Hulett,* 10 Minn. 15; Bliss, Code Pleading (3d ed.) sec. 202.

In support of its contention defendant cites *Hale v. Missouri P. R. Co.,* 36 Neb. 266. We have examined that case and do not believe the conclusions there reached are applicable to the facts in the case at bar. The section of the United States statute referred to therein differs materially from the statute under which the action in the case before us is brought. In the present case the exception relied on is not in the enacting clause of the statute, but occurs in a proviso, and it appears the prevailing weight of authority is to the effect that, where the exception is so stated in the statute, such exception is matter of defense and need not be negatived by the plaintiff. In *Hale v. Missouri P. R. Co.,* 36 Neb. 266, it does not appear the action was brought under the section of the United States statute that is referred to in that opinion. No reference is made to it in the record, nor in the briefs of counsel. The statute is noticed for the first time in the record of the *Hale* case in the opinion of the court, and appears to be dictum. The suit was brought evidently as a common law action on a contract of shipment for the loss of live stock by the alleged negligence of the railroad company, and appears to us to be clearly distinguishable from the one now before us. *Young v. Kansas City, St. J. & C. B. R. Co.,* 33 Mo. App. 509, *Ruth v. Lowrey & Upton,* 10 Neb. 260, and *Haskins v. Alcott & Horton,* 13 Ohio St. 210, cited by defendant, do not seem to be applicable to the facts involved herein.

In a case arising under the statute here in question, it is obvious the exceptions noted with respect to the time consumed in picking up and setting out cars and in loading and unloading stock at stations are peculiarly within the knowledge of the employees of defendant, and doubtless the legislature had this thought in mind and the act was perhaps prepared in part to meet this condition. A shipper, as such, is not of necessity learned in the manifold intricacies attendant upon the active management of lines of transportation, and he would not, perhaps, be competent to determine with any reasonable degree of

accuracy whether the time occupied by the railroad company, in the respects noted, was necessarily occupied or otherwise. In any event, from the language of the statute as it appears in the act, it was evidently not the legislative intention to impose upon the shipper of live stock the burden of proving the exception noted in the statute before he could avail himself of its compensatory provisions. A shipper does not always accompany his stock to market, particularly if the shipment consists of but a single car-load, in which event knowledge of the delay contemplated by the statute, and the reasons therefor, would be, perhaps, exclusively within the knowledge and the power of defendant. It may be that these and kindred contingencies engrossed the legislative mind when the remedial act in question was enacted. The legislature is presumed to know the general conditions surrounding the subject matter of legislative enactment, and it will be presumed it knows and contemplates the legal effect that accompanies the language it employs to make effective the legislative will. The presumption will also be indulged that the lawmaking body is conversant with the established rules of statutory construction, and that in the passage of the act in question it did not lose sight of the elementary proposition that the enacting clause of a statute is that part which immediately precedes the proviso. After careful consideration we hold upon this point that the contention of defendant cannot be upheld, and that the exception noted in the statute is matter of defense that need not be negatived by plaintiff.

Upon the second point to which the argument of counsel is directed, defendant contends that the act in question contravenes section 4, art. XI of the constitution, which provides that the liability of railroad corporations as common carriers shall never be limited, and should therefore be declared void. Following is the provision of the constitution which the defendant maintains has been violated by the act under which this suit is brought, and to which the argument on rehearing has in part been di-

rected: "Railways heretofore constructed, or that may hereafter be constructed in this state are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law. And the legislature may from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on the different railroads in this state. The liability of railroad corporations as common carriers shall never be limited." To the argument of defendant on this point plaintiff interposes the objection that the defendant company cannot be heard to urge the alleged unconstitutionality of the act, because it is not shown that it has been in any manner injured thereby. In this respect the record sustains the position of plaintiff. There is not a syllable of testimony to show that the amount of plaintiff's recovery under the statute is more than the actual damage he suffered by the delay of his shipments, and for which, even in the absence of a statute, the defendant would be liable. Until defendant is shown affirmatively to have been injured, he cannot be heard to complain that the act under which the suit is brought is unconstitutional. The rule is thus stated in Cooley, Constitutional Limitations (7th ed.) p. 232: "Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it." In *Clark v. Kansas City,* 176 U. S. 114, Mr. Justice McKenna cites with approval the foregoing language of Judge Cooley, and adds: "We concur in this view, and it would be difficult to add anything to its expression." *Kellogg v. Currens,* 111 Wis. 431: "Statutes are not to be declared unconstitutional at the suit of one who is not a sufferer from their unconstitutional provisions. * * * We cannot set aside the acts of the legislature at the suit of one who, suffering no wrong himself, merely assumes to champion the wrongs of others." In *Wellington et al.,*

*Petitioners,* 16 Pick. (Mass.) 87, the court, speaking by Shaw, C. J., says: "Where an act of the legislature is alleged to be void, on the ground that it exceeds the limits of legislative power, and thus injuriously affects private rights, it is to be deemed void only in respect to those particulars, and as against those persons whose rights are thus affected." The following authorities fairly support plaintiff's contention: *People v. Brooklyn, F. & C. I. R. Co.,* 89 N. Y. 75; *Williamson v. Carlton,* 51 Me. 449; *Pittsburg, C., C. & St. L. R. Co. v. Montgomery,* 152 Ind. 1; *Currier v. Elliott,* 141 Ind. 394; *Board of Commissioners v. Reeves,* 148 Ind. 467; 6 Am. & Eng. Ency. Law (2d ed.) 1090; *Commonwealth v. Wright,* 79 Ky. 22; *Sullivan v. Berry's Adm'r,* 83 Ky. 198; *Jones v. Black,* 48 Ala. 540; *Moore v. City of New Orleans,* 32 La. Ann. 726; *McKinney v. State,* 3 Wyo. 721; *Dejarnett v. Haynes,* 23 Miss. 600; *Marshall v. Donovan,* 10 Bush (Ky.) 681; *Small & Carr v. Hodgen,* 1 Litt. (Ky.) 16; *Henderson v. State,* 137 Ind. 552; *Embury v. Conner,* 3 N. Y. 511; *Supervisors v. Stanley,* 105 U. S. 305.

In support of its position defendant cites *Greene v. State,* 83 Neb. 84. We have carefully examined the citation, and it seems to us to be clearly distinguishable from the case now before us. The validity of a criminal statute was there in question that by its express terms limited its protective features exclusively to citizens or residents of this state. The act was held to be invalid because it contravened section 15, art. III of the constitution, which prohibits special legislation, and section 1 of the fourteenth amendment to the federal constitution, which provides that no state shall deny any person within its jurisdiction the equal protection of the laws. From an examination of that case it is obvious, if the defendant there could not invoke the protection of the constitutional inhibitions, no one could do so.

After careful examination, and in view of the foregoing authorities, and for the reasons stated in the opinion, we

find ourselves precluded from passing upon the constitutional points raised and argued by the defendant.

A minor feature remains for us to consider. In its brief for rehearing defendant maintains it is entitled to a remittitur of $170 from the amount allowed to plaintiff on his twenty-first cause of action, and in support of its contention invokes the rule applied by us in our former opinion to plaintiff's first cause of action, wherein we deducted $240 from the amount allowed by the trial court. Plaintiff sued under the act·in question for 25 separate delayed shipments, and recovered judgment as damages therefor in the total sum of $1,640. In reviewing the judgment of the lower court in our former opinion we directed, for the reasons therein stated, and which need not be here repeated, that, unless the plaintiff within 30 days of the filing of the opinion remitted $240 as of the date the judgment was entered in the lower court, the case would be reversed and the cause remanded for further proceedings because of an excessive allowance for damages growing out of plaintiff's first cause of· action, but that, if such remittitur were filed, the judgment of the district court would be affirmed. A remittitur was duly filed in the manner and within.the time pointed out in the opinion. The record discloses without contradiction the twenty-first cause of action relates to a shipment made at Burwell on Friday, September 8, 1905, at 9 o'clock in the forenoon, which arrived in South Omaha, the point of destination, on the following Monday, September 11, at 4 : 55 o'clock in the morning. Plaintiff alleges this shipment was 52 hours and 18 minutes longer in transit than the time contemplated by the statute in question, and that the amount of the recovery to which he is entitled therefor under the statute as liquidated damages is $520. The answer alleges, and the proofs show, that this cattle shipment arrived at Lincoln, on its way to South Omaha, at 9 : 20 in the forenoon on the Sunday following the date of shipment, and was held there until 11 : 40 in the afternoon of the same day, in the meantime having been unloaded

and fed, when it was again loaded and reshipped to the point of destination, arriving there on Monday at 4:55 in the morning. The proofs show the cattle were in the pens and feed yards of the defendant 14 hours and 20 minutes at Lincoln, thus entitling defendant, by the terms of the act in question, to have deducted from the time allowed to plaintiff in the trial court the 14 hours and 20 minutes that the cattle were in the Lincoln feed yards. To this must be added an additional deduction of 2 hours and 40 minutes in favor of defendant, that being the difference in the time alleged in the petition and the time as actually shown by the record, in addition to the time consumed in feeding at Lincoln, which should be deducted from the delayed time for which plaintiff was allowed damages in the trial court, making a total deduction of 17 hours, and which, under the statute, amounts to $170, and for which amount defendant is entitled to an additional remittitur.

Upon careful reexamination of the questions argued upon the rehearing, we adhere to our former opinion, except to hold that defendant is entitled to an additional remittitur of $170 for the reasons stated herein; and, unless within 30 days after the filing of this opinion plaintiff remits that amount from the judgment obtained in the trial court, the case will be reversed and remanded for further proceedings, but, in the event of the filing of such remittitur within the time named, the motion for rehearing will be overruled and our former opinion sustained.

JUDGMENT ACCORDINGLY.

ROSE, J., did not sit, and took no part in this decision.

BARNES, J., dissenting.

I am constrained to dissent from the conclusion of my associates. The majority hold that the petition in this case is sufficient without an allegation that no part of the time employed by the carrier in transporting plaintiff's stock, in so far as delay is made the basis of recovery,

was "consumed in picking up and setting out, loading and unloading stock at stations." I am unable to concur in this holding. For anything appearing in the petition, the delay, for which the plaintiff recovered at the rate of $10 an hour for each car, may have been caused by the performance of the carrier's lawful and imperative duty to pick up and set out cars of stock. The time thus employed by the carrier cannot be made a basis of recovery, because the statute says: *"The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time required, as provided in this schedule."* It seems to me to be a strange rule of pleading which denies a carrier the benefit of this positive command, unless it is pleaded as a defense. The statute forbids a recovery for the time consumed by the carrier in the performance of the unavoidable duty of picking up and setting out cars at stations. In allowing shippers of live stock to recover for delays without regard to actual damages, the legislature attempted to create an arbitrary remedy which is a stranger to the common law, and which has few, if any, parallels in remedial legislation. I do not believe that the right of recovery should be extended by judicial construction of the statute. One invoking its provisions should be required to bring his case exactly within its terms, and show by affirmative allegations that the conditions making recovery unlawful do not exist. The courts are not responsible for hardships in making proof of facts essential to such statutory relief, and have no right to impose on a defendant the burden of proving non-existent conditions, simply because the information is within its knowledge, where the legislature by unambiguous language has pointed out a different course.

One reason given for the conclusion of the majority is that the conditions or exceptions are found in a proviso, and, hence, should be pleaded by the defendant, when relied on as a defense. I think a careful reading of the statute will show the fallacy of this reasoning. The material part of the enactment is as follows: "It is hereby

declared and made the duty of each corporation, individual, or association of individuals, operating any railroad as a public carrier of freight in the state of Nebraska, in transporting live stock from one point to another in said state in car-load lots, in consideration of the freight charges paid therefor, to run their train conveying the same at a rate of speed so that the time consumed in said journey from the initial point of receiving said stock to the point of feeding or destination, shall not exceed one hour for each eighteen miles traveled, including the time of stops at stations or other points: Provided, in cases where the initial point is not a division station and on all branch lines not exceeding 125 miles in length, the rate of speed shall be such that not more than one hour shall be consumed in traversing each 12 miles of the distance, including the time of stops at stations or other points, from the initial point to the first division station or over said branches. The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time required, as provided in this schedule." Ann. St. 1907, sec. 10606.

It will be observed that the language following the word "provided," down to the concluding word of that clause, fixes the minimum rate of speed on all branch lines not exceeding 125 miles in length, and the preceding portion fixes the minimum rate of speed on all other lines. It follows that the proviso, if it may be so called, applies alone to the rate of speed on branch lines, and has no application whatever to that portion of the substantive and declaratory part of the act which applies to both main line and branches, and which reads: "The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time required, as provided in this schedule." When a carrier is sued for delay in transporting stock on a branch line only, where the minimum rate of speed is 12 miles an hour, is the plaintiff's measure of recovery determined by the main line speed of 18 miles an hour, unless the defendant pleads

that the stock was shipped over a branch line? If this question cannot be answered in the affirmative, then the correct rule has not been announced by the majority. The provision fixing a 12-mile rate of speed on branch lines is found alone in the so-called proviso, and precedes the clause relating to time consumed in picking up and setting out stock at stations, which declares: "The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time, as provided in this schedule." This clause is a substantive part of the declaratory provisions of the act, and applies to the schedule of both main and branch lines. The fact that the word "proviso" precedes the exception relating alone to the rate of speed on branch lines does not alter the situation or change the import of the legislation. If this be a correct conception of the statute, then the plaintiff's case is within the rule announced by this court in *Ruth v. Lowrey & Upton,* 10 Neb. 260, which reads as follows: "It is an elementary principle in pleading, that where a statute, upon certain conditions, confers a right or gives a remedy unknown to the common law, the party asserting the right, or availing himself of the remedy, must, in his pleading, bring himself or his case clearly within the statute. *Haskins v. Alcott & Horton,* 13 Ohio St. 210." It seems clear to me that in allowing the plaintiff to recover without pleading that no part of the whole time employed by the carrier in transporting the plaintiff's stock "was consumed in picking up and setting out, loading or unloading stock at stations," the majority has departed from the principle announced in *Hale v. Missouri P. R. Co.,* 36 Neb. 266.

Again, the majority of the court has declined to pass upon the question of the constitutionality of the act on which the plaintiff's right to recover depends, for the alleged reason that the defendant is not injured thereby. I am unable to understand the logic of this declaration. Solely by reason of the provisions of the statute in question, and without other cause, the decision of the majority

requires the defendant to pay to the plaintiff a sum of money amounting to about $1,500 as so-called liquidated damages, although plaintiff has not shown that he has suffered any actual damages whatever by any act of the defendant, negligent or otherwise. The effect of this decision is to take from the defendant that much of its property and transfer it to the pocket of the plaintiff, without any legal or equitable right other than the command of the statute complained of. To say that the defendant is not injured by the enforcement of the act, and therefore cannot question its constitutionality, seems absurd. Such a declaration should not find sanction in any judgment of this court.

For the foregoing reasons, I am of opinion that a rehearing should be allowed; that our former decision should be overruled, and the judgment of the district court should be reversed.

FAWCETT, J., concurs.