KROTTER & P. J. FITZGERALD, APPELLEE, V. JAMES C. DAVIS,
DIRECTOR GENERAL, APPELLANT.

FILED JULY 31, 1924.   No. 22846.

1. **Appeal: HARMLESS ERROR.** An erroneous instruction is not a
ground for reversal, unless the complaining party is shown to
have been prejudiced thereby in a substantial right.

2. ———: **AFFIRMANCE.** When an action is brought to recover
for damages to a freight shipment while the railroad was under
control of the director general of railroads, and the railroad
corporation, upon whose line the damage occured, was named
as a party defendant in the same suit, and upon a demurrer and a
plea in abatement being both confessed and the action against
the railroad corporation being thereupon dismissed, and trial
thereafter proceeding against the director general alone, *held*,
that the judgment obtained against the director general should
not be reversed on the ground that the railroad company had
also been named as a party defendant.

3. **Evidence** examined, discussed in the opinion, and *held* that the
judgment is without reversible error.

APPEAL from the district court for Chase county:
CHARLES E. ELDRED, JUDGE.   *Affirmed.*

*E. E. Whitted, J. L. Rice* and *J. F. Cordeal,* for appellant.

*Scott & Scott, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, GOOD, and
THOMPSON, JJ.

DEAN, J.

Plaintiff is a partnership engaged in the live stock busi-
ness at Imperial, Nebraska.   July 26, 1919, the firm shipped
a car-load of hogs consisting of a mixed lot of 66 head from
Imperial to the St. Joseph market over defendant's railroad.
The shipment arrived at destination about 10 or 11 o'clock
in the nighttime of July 27, and was not unloaded until
about 6 or 7 o'clock the next morning.   It was then found 15
of the hogs were dead.   During the time the shipment was
in transit the temperature prevailing over the section of
country through which it passed, as shown by an official

government report, and by witnesses produced at the trial, was extremely and unusually high. In fact defendant concedes this. Plaintiff's allegation of negligence is based on the fact that, among other things, defendant did not sufficiently drench the hogs *en route*, and that, by reason of its carelessness and negligence in this respect, the hogs perished. This action was therefore brought to recover $995.25 for the loss of the hogs. When the evidence was submitted the jury brought in a verdict for $950 upon which judgment was rendered. Defendant has appealed.

The contention is that when the hogs were delivered to defendant they were in good, sound and normal condition and that during all of the time the shipment was in transit the hogs were under defendant's exclusive control and supervision, no caretaker having accompanied the shipment.

Defendant denied generally all of the material allegations of plaintiff's petition, and alleged, among other things, that the death of the hogs "was due to the inherent vice and propensities of the animals being transported, and to the usual and ordinary movement of freight cars and trains, and to matters over which defendant had no control," and was not caused by any fault or negligence of the defendant.

The railroad conductors who had separate charge of the train over the five railroad divisions upon which the shipment was carried testified that the hogs were drenched at different stations on the journey. Whether the drenching was thorough or whether it was performed in a perfunctory manner does not appear. The witnesses seem to have arrived at a conclusion and they testified to such conclusion as being an established fact. One conductor testified that he "watered" the hogs at certain designated places, but whether it was meant that the thirst of the hogs was quenched or that they were "drenched" by having water poured over them in considerable quantities the jury were not informed. And these important facts were all within the exclusive knowledge of defendant. In a comparatively recent case we held that, where a shipment of live stock was delayed by the carrier and loss was thereby occasioned to the shipper, who did not accompany the shipment, the

cause for the delay was peculiarly within the knowledge and power of the carrier and was matter of defense. *Cram v. Chicago, B. & Q. R. Co.*, 85 Neb. 586, 26 L. R. A. n. s. 1022; *Chicago, B. & Q. R. Co. v. Cram*, 228 U. S. 70. We think that substantially the same principle is involved here and the rule is therefore applicable to the facts.

Defendant, of course, in recognition of the danger which attends the shipment of hogs in extremely hot weather, instructed the trainmen to drench all hog shipments at every watering station if the shipment was not accompanied by a caretaker. But whether the hogs were sufficiently drenched, in view of the prevailing excessive heat, was for the jury, and there appears to be sufficient evidence to support a finding that plaintiff's hogs did not have such attention in this respect as the condition of the temperature reasonably required.

Dr. W. H. Bailey is a veterinary surgeon and is connected with a weighing and inspection bureau at the St. Joseph stock-yards. On direct examination he testified, on defendant's part, that he saw the 15 dead hogs about 8 o'clock, upon their arrival, the morning of July 28, and that "four of those were decomposed and eleven were fresh," and that some of the dead hogs were small and some were quite heavy, and that excessive heat would be sufficient to produce the condition which he found. Continuing he frankly testified that the hogs "died from congestion of the lungs, induced by heat, fatigue and lowered resistance of the body." On this point defendant argues that the four decomposed hogs were in such a state of decomposition as to render it impossible to determine the cause of death. But it seems to us that if upon arrival almost 25 per cent. of the dead hogs, some large and some small, were in the advanced state of putrefaction which the evidence discloses, the jury were justified in concluding that culpable negligence was clearly shown and that it was reasonable to believe that such negligence was continuously present throughout the trip.

Defendant complains of certain instructions which were

given and of tendered instructions which were refused. Upon examination it appears that defendant's contention is without substantial merit. It is well settled in this jurisdiction that an erroneous instruction is not a ground for reversal unless the complaining party is shown to have been prejudiced thereby in a substantial right. No prejudice has been shown in this respect. *Rocha v. Payne,* 108 Neb. 246; *Moore v. Muller,* p. 551, *post.* From a review of the record we conclude that the verdict is amply supported by the evidence.

Another objection is raised by defendant. June 22, 1920, the petition was filed wherein the defendant railroad company "and John Barton Payne, federal agent for the United States railroad administration," were named as defendants. August 30, 1920, John Barton Payne demurred, on the ground of a defect of parties plaintiff. On the same day the defendant railroad company filed a plea in abatement on the ground that plaintiff's cause of action, under the federal law, should have been brought only against John Barton Payne, Federal Agent, etc., and not against the defendant railroad. November 17, 1921, the demurrer and plea in abatement were confessed in open court and the cause was dismissed as to the defendant railroad company. Plaintiff's counsel filed no additional or supplemental pleading, nor was the petition amended. However, on the same day an answer was filed, wherein defendant was designated as "James C. Davis, Federal Agent, etc. Defendant." Plaintiff's reply designated "James C. Davis, Director General of the Railroads, as agent provided for in section 206 of the Transportation Act of 1920, Defendant." Thereupon the case at once proceeded to trial.

Extended argument is now interposed to support the contention that the petition does not state a cause of action against Director General Davis and that it does not support the judgment. In view of plaintiff's confession, and the dismissal of the railroad company, pursuant to defendant's plea, we do not think the argument should prevail. The contention is based on purely technical grounds, and

in view of the answer and in view of the director general
having pleaded to the merits and having proceeded to trial,
and the evidence of the parties having been submitted,
without objection by defendant on this feature of the case,
counsel cannot now be heard to raise the question here.  It
clearly appears that counsel waived the objection which is
now urged.

This is not a case where a demurrer was sustained and
the pleader refused to amend.   On the contrary, the de-
murrer and plea in abatement were both confessed and,
apparently by an oversight, the petition was not amended.
To reverse the judgment and to remand the case, in the
present state of the record, would be to apply an obviously
technical rule of practice to the pleading which defendant
now attacks and thereby cause a mistrial.   We decline to
go so far.   Reversible error has not been shown.

The judgment is affirmed, with leave to plaintiff, if so
advised, to amend its petition to conform to the theory on
which the action was tried.

AFFIRMED.

Note—See Appeal and Error, 4 C. J. p. 1029, sec. 3013;
p. 926, sec. 2898 (1925 Ann.).