[Criminal No. 373.    Filed February 13, 1915.]

[146 Pac. 494.]

## LOUIS GHERNA, Appellant, v. STATE, Respondent.

1. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS—SELF-EXECUTING PROVISIONS—PROHIBITION AMENDMENT—"APPROPRIATE."—The prohibition amendment to the Constitution, which in section 1 prohibits the manufacture in or introduction into the state of any intoxicating liquor and punishes any person who manufactures or sells or introduces into the state intoxicating liquor, and which declares in section 2 that the legislature shall, by appropriate legislation, provide for carrying into effect of the amendment, and which provides in section 3 that the amendment shall take effect on and be in force after January 1, 1915, is, when considered as a whole, self-executing; and

section 2 merely imposes on the legislature the duty of enacting appropriate legislation for enforcement of prohibition; "appropriate" meaning suitable, fit, befitting, proper.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTIONAL PROVISIONS. The court, in construing a constitutional amendment, may transpose sentences and sections, to aid in arriving at the true construction thereof.

3. CONSTITUTIONAL LAW—LEGISLATIVE POWER.—Constitution, article 22, section 21, requiring the legislature to enact all necessary laws to carry into effect the provisions of the Constitution, grants no power to the legislature, and the duty it seeks to impose exists without the provision.

4. CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — LEGISLATIVE POWER.—A self-executing provision of the Constitution does not necessarily exhaust legislative power on the subject, but any legislation must be in harmony with the Constitution and further the exercise of constitutional right and make it more available.

5. STATUTES—LEGISLATIVE POWER.—The legislature is intrusted with the general power to make laws at its discretion, and is not a special agency for the exercise of specifically defined legislative powers.

6. CONSTITUTIONAL LAW—PROHIBITION AMENDMENT—CONSTRUCTION.— The court, in construing the prohibition amendment to the Constitution, must construe it as a whole and, if possible, give effect to the whole and to every section and clause; and, where different portions thereof seem to conflict, it must harmonize them, if practicable, and lean in favor of a construction which will render every provision operative.

7. CRIMINAL LAW—JURISDICTION—CONSTITUTIONAL AND STATUTORY PROVISIONS.—Under Civil Code of 1913, paragraph 340, conferring on the superior courts original jurisdiction in all cases in which jurisdiction is not vested by law in some other court, and paragraph 385, giving jurisdiction to justices of the peace of criminal cases other than felonies, where the punishment is a fine not exceeding $300, or imprisonment in the county jail not exceeding six months, or both, the offense created by the prohibition amendment to the Constitution, making a person, selling, manufacturing or introducing into the state intoxicating liquor, guilty of a misdemeanor punishable by imprisonment for not less than 10 days nor more than 2 years and by a fine not less than $25 and costs nor more than $300 and costs, is within the jurisdiction of the superior court.

8. CRIMINAL LAW — OFFENSES — PUNISHMENT—"FELONY" — "MISDEMEANOR."—Under Penal Code of 1913, sections 16, 17, dividing crimes into felonies and misdemeanors, defining a felony as a crime punishable by death or imprisonment in the state prison, and every other crime as a misdemeanor, the place of punishment fixes the grade of the crime, and the imprisonment for a misdemeanor must

be in the county jail, and, the prohibition amendment declaring a violation thereof, a misdemeanor fixes the county jail as the place of imprisonment.

9. CRIMINAL LAW—OFFENSES—PUNISHMENT.—Where a statute is silent as to the place of imprisonment, and any doubt exists as to whether it shall be in the penitentiary or county jail, accused should be imprisoned in the county jail.

10. CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS.—The fact that the costs cannot be collected, and that supplemental legislation is necessary, does not affect the provisions of the prohibition amendment to the Constitution, which are clearly self-executing.

11. CONSTITUTIONAL LAW—STATUTES—VALIDITY—PARTY ENTITLED TO RAISE QUESTION.—One cannot raise an objection to the constitutionality of a part of a statute, unless his rights are in some way injuriously affected by the statute, or unless the constitutional feature renders the entire act void.

12. STATUTES—VALIDITY IN PART—INVALIDITY IN PART.—A statute is valid in part where the valid part is separable from the invalid part, and is capable of being executed, and thereby effectuate the manifest intent of the legislature.

13. CONSTITUTIONAL LAW — PROHIBITION AMENDMENT — INVALIDITY IN PART—RIGHT TO RAISE QUESTION.—One charged with selling liquor in violation of the prohibition amendment to the Constitution may not raise the question of the constitutionality of the provision prohibiting the introduction into the state of intoxicating liquor as an interference with interstate commerce, unless that provision, if invalid, renders the entire amendment invalid.

14. CONSTITUTIONAL LAW—PROHIBITION AMENDMENT—VALIDITY—PARTIAL INVALIDITY.—The main purpose of the prohibition amendment to the Constitution is to prohibit the manufacture and sale in the state of intoxicating liquor, and the provision prohibiting the manufacture and sale in the state is valid, though the provision prohibiting the introduction into the state of intoxicating liquor is invalid as interfering with interstate commerce.

15. INTOXICATING LIQUORS—PROHIBITION—POLICE POWER.—The state, in the exercise of its police power, may prohibit the manufacture and sale in the state of intoxicating liquors.

16. CONSTITUTIONAL LAW—STATUTES—VALIDITY—JUDICIAL QUESTIONS.— The court, in determining the validity of a statute, cannot consider its wisdom or policy or expediency.

17. INTOXICATING LIQUORS—"LICENSE"—NATURE.—A license for the sale of liquor is not a contract within the protection of the constitutional guaranties, but is a mere permit affording protection to the holder, but the privilege may be revoked by the repeal of the law authorizing the issuance of the license.

18. CONSTITUTIONAL LAW—CONSTITUTIONAL AMENDMENT—EFFECT ON EXISTING LAWS.—The prohibition amendment to the Constitution annuls existing laws permitting the manufacture and sale under licenses or other restrictions.

19. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—PRIVILEGES OF CITIZENS.—The prohibition amendment to the Constitution does not deprive liquor dealers of their property without due process of law, and does not discriminate against citizens of other states, though it may deprive dealers of the right to pursue the business which was previously lawful and diminish the value of the property devoted to the business.

20. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACTS.—The prohibition amendment to the Constitution does not impair the obligation of contracts, though prohibiting the sale of liquor by existing licensed dealers.

21. CONSTITUTIONAL LAW — EX POST FACTO LAW. — The prohibition amendment to the Constitution is not an *ex post facto* law, in so far as it prohibits the sale of liquor in existence at the time of its adoption.

22. INTOXICATING LIQUORS — PROHIBITION — CONSTITUTIONAL LAW.—The prohibition amendment to the Constitution is not invalid as confiscating the license money paid by liquor dealers, or because depreciating lease rentals and stocks of liquor, for these have no bearing on the right to sell liquor after the revocation of a license.

23. INTOXICATING LIQUORS — REVOCATION OF LICENSES — REMEDY OF LICENSEES.—The state, in the exercise of its police power, may revoke liquor licenses, and whether the law is confiscatory may be litigated, provided the state permits the bringing of an action against it for that purpose.

APPEAL from a judgment of the Superior Court of the County of Pima.   W. F. Cooper, Judge.   Affirmed.

The facts are stated in the opinion.

Mr. John B. Wright and Mr. Eugene S. Ives, for Appellant.

Mr. Wiley E. Jones, Attorney General, Mr. Leslie C. Hardy and Mr. George W. Harben, Assistants to the Attorney General, and Messrs. Baker & Baker, for Respondent.

Mr. John H. Campbell and Mr. Samuel L. Kingan, of Counsel for Respondent.

PER CURIAM.—The appellant, Louis Gherna, appeals from a judgment of conviction of selling intoxicating liquor,

to wit, a bottle of whisky, on January 1, 1915, in violation of the prohibition amendment to the state Constitution. The initiative petition by the qualified electors of the state for the proposed amendment was filed with the Secretary of State on July 2, 1914. It was adopted by the electorate of the state at the 1914 November election and became law and a part of the Constitution on December 15, 1914, by proclamation of the Governor. It appeared in the Publicity Pamphlet, which was mailed to the voters of the state, as follows:

"Proposed Amendment of the Constitution of the State of Arizona.

"Prohibiting the introduction into, the manufacture of, and the giving, exchanging, bartering, selling or disposing of ardent spirits, ale, beer, wine or intoxicating liquors in the state of Arizona and prescribing a penalty for the violation thereof.

"Be it enacted by the people of the state of Arizona:

"That the Constitution of the state of Arizona be and is hereby amended by adding thereto another article the same to be numbered XXIII and to read as follows, to wit:

"Section 1. Ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense. Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind to any person in the state of Arizona, or who manufactures, or introduces into, or attempts to introduce into, the state of Arizona any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind, shall be guilty of a misdemeanor and upon conviction shall be imprisoned for not less than ten days nor more than two years and fined not less than twenty-five dollars and costs nor more than three hundred dollars and costs for each offense: Provided, that nothing in this amendment contained shall apply to the manufacture or sale of denatured alcohol.

"Sec. 2. The legislature shall by appropriate legislation provide for the carrying into effect of this amendment.

"Sec. 3. This amendment shall take effect on and be in force on and after the first day of January, 1915."

It is the contention of appellant that this amendment (1) is not self-executing; (2) that if it is self-executing, it is confiscatory; and (3) that it violates the interstate commerce clause of the Constitution of the United States.

We are of the opinion that, by the terms of the amendment, it is self-executing. It denounces certain things and prescribes a penalty for doing them, or any of them. It is as complete and full as most criminal statutes that define crimes and prescribe penalties for their commission. But, upon the hypothesis that it is self-executing, it seems to be the contention of appellant that its self-executing feature is suspended or postponed, by virtue of section 2 thereof, until a time when "the legislature shall by appropriate legislation provide for the carrying into effect of this amendment." This construction nullifies section 3, which should not be permitted, if possible. By it, it is provided that the "amendment shall take effect on, and be in force on and after the first day of January, 1915." Neither section 2 nor section 3 should be cast aside as so much "dead wood." It may be admitted that the language used in these sections, if literally interpreted, is apparently subject to the criticism of contradicting itself. But the framer, and the people who adopted the amendment, must have inserted both sections with a clear vision of their separate purpose. The object sought was to stop the traffic in intoxicating beverages. The qualified voters were clothed with the power to accomplish that object. They could have announced, in the amendment, the principle of prohibition and stopped there, as many of the states have done, and left to the law-making bodies (themselves or the legislature) the duty of enacting laws defining the offense and fixing the penalties. But they did not do that. They not only announced the principle of prohibition, but entered the domain of legislation defining the offense and prescribing punishment, and fixed a date when it should be in force and effect, to wit, January 1, 1915. The purpose, then, of inserting in the amendment section 3, is evident. It cannot be mistaken. It means, if words are really the vehicle by which thoughts and ideas are conveyed, just what it says; i. e., that the amendment is in force on and after January 1, 1915. While the enacting clause printed at the head of the amendment was not necessary and is no part thereof, we think it

permissible and proper to look to it to aid us in ascertaining the intention of the electors in adopting the amendment. It conveys the idea of a self-operating law. It connotes prohibition of the things mentioned and punishment for violation thereof. The context amplifies and elaborates the title into positive, prohibitive, and penal law. While section 2 is a part of the amendment, we do not think it an essential part of it. Before discussing section 2, however, let us examine the amendment with it eliminated. With section 2 laid aside for the moment, the amendment in substance and effect would read:

"Ardent spirits, ale, beer, wine or intoxicating liquor or liquors òf whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense. Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine or intoxicating liquors of any kind to any person in the state of Arizona, or who manufactures, or introduces into, or attempts to introduce into the state of Arizona, any ardent spirits, ale, beer, wine or intoxicating liquor of any kind, *on or after January first, 1915,* shall be guilty of a misdemeanor, and upon conviction," etc.

Having here suggested in concrete form what we conceive to be the meaning of the amendment as intended by the electorate when voting for it, we will now reinsert section 2 giving it number "3." The transposition of sentences and sections in an enactment, in order to aid in construction, is no new or novel thing. As was said *In re Bull's Estate,* 153 Cal. 715, 96 Pac. 366:

"The numbering of sections in statutes is a purely artificial and unessential arrangement, resorted to for purposes of convenience only, and can never be allowed to hinder a correct construction of the entire act."

The changing of the position of section 2 from 2 to 3 does not change its meaning in the least, nor does it change the meaning of the whole amendment in the least. It does, however, aid in searching out the meaning of its authors. It makes plain that the amendment was a living, vital thing with a sting in it, on and after January 1, 1915. We have found, beyond a doubt, what sections 1 and 3 mean with section 2 eliminated for the moment. Do sections 1, 2, and 3

mean the same thing that sections 1 and 3 mean? Our answer
is, "Yes." Note the language of section 2:

"The legislature shall by appropriate legislation provide
for the carrying into effect of this amendment."

The last section of the state Constitution (section 21, article
22), while not in the exact language of section 2, conveys the
same idea and was doubtless inserted in the Constitution for
the same purpose. The section of the Constitution reads:

"The legislature shall enact all necessary laws to carry into
effect the provisions of this Constitution."

There are some provisions of the Constitution that are self-
operating, expressly made so, and there are many just as
plainly self-operating by implication. There are some that
contain mandates to the legislature to enact supplemental
legislation, and there are some sections that indicate a policy
or principle, and no more. Surely, no one would contend
that, because of the existence of section 21, article 22, of the
Constitution, the provisions thereof expressly self-executing
or clearly impliedly so, are to be suspended or postponed
until the legislature shall speak; nor do we think section 21,
article 22, superadds any power in the legislature not already
possessed by it to "enact all necessary laws to carry into
effect" all of the provisions of the Constitution, whether those
provisions be self-executing or merely indicate a line of policy
or principles. The declaration of a policy or principle in the
fundamental law, in and of itself, imposes a duty on the legis-
lature to provide the method and means of effectually carry-
ing out the policy or principle. A mandate to the legislature
to do its duty cannot make the obligation any more binding.
The duty exists just the same without the mandate. So we
say that section 21, article 22, might just as well have been
omitted from the Constitution, as it granted no power to
the law-making body not already possessed, and for the same
reason section 2 of the prohibition amendment fills no office,
except it be given the effect of a request to the legislature to
do what was already its duty to do. The request, then, to
the legislature was that it pass "appropriate legislation" for
carrying into effect the amendment. The Century Diction-
ary defines "appropriate" as "suitable; fit; befitting; proper."
It should be remembered that this prohibition amendment is
an act of the sovereignty. The legislature, therefore, cannot

take from it or add to it, but it may pass suitable, fit or proper laws as an aid to the authorities whose duty it is to enforce the constitutional provision. The experience of those states that have tried to suppress the liquor traffic has been that many subterfuges are resorted to to defeat the object aimed at. This fact was doubtless well known to the electorate, and in anticipation of like tactics being practiced in this state, and out of abundant caution, they requested, by section 2 thereof, that the legislature pass appropriate legislation, for instance, such as declaring places where liquor is sold nuisances, making possession of liquor *prima facie* evidence of guilt, providing for the search of blind tigers, and rules requiring transportation companies to keep records of liquor shipped into the state, etc.

As was said in *Nowakowski* v. *State*, 6 Okl. Cr. 123, 129, 130, 116 Pac. 351, 353, 354:

"It is not every self-executing provision of a Constitution which exhausts legislative power upon the subject with which it deals. There are many such where legislation in aid of or in addition to the provision is both permissible and desirable. . . . In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same, so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified. *Stevens* v. *Benson*, 50 Or. 269, 91 Pac. 578; *Reeves* v. *Anderson*, 13 Wash. 17, 42 Pac. 625; *Becher* v. *Baldy*, 7 Mich. 488; *Willis* v. *Nabon*, 48 Minn. 140, 31 Am. St. Rep. 626, 16 L. R. A. 281, 30 N. W. 1110; *People* v. *Draper*, 15 N. Y. 532; Cooley's Const. Lim., 7th ed., 122; Ordronaux's Const. Legislation, 262–265. 'In creating the legislative department, and in conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United

States.  The legislative department of a state is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with the general authority to make laws at discretion.  Cooley's Const. Lim., 7th ed., 126.' ''

What we have said with reference to a proper construction of the prohibition amendment has been in view of the general rule of construction, as applied to instruments of this kind. That rule is stated by Judge Cooley, in his work on Constitutional Limitation, seventh edition, at page 91, to be:

''That *effect is to be given, if possible, to the whole instrument, and to every section and clause.*  If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.''  2 Lewis' Sutherland, Stat. Con., par. 380.

The construction contended for by appellant would not give operative effect to section 3.  It would ignore its provisions entirely, and in doing so would ascribe a meaning to provisions of section 2 incompatible with section 1, for, as we have seen, section 1 not only declares the policy or principle of prohibition, but defines its violation as a crime and prescribes the penalty.  By section 2 it could not have been intended that the legislature should give the crime a different definition or prescribe a different penalty, but should be limited to the enacting such appropriate legislation as would aid ''in carrying into effect'' successfully the law as announced in section 1.

This construction gives to section 2 the evident meaning intended by its authors, for whatever it is worth, harmonizes all of the provisions of the amendment, and gives the intended effect to the whole instrument.  If we should yield to the arguments of appellant as sound and relegate the amendment to the legislature for the breath of life, what could that body do?  Simply re-enact section 1 word for word, and provide, as directed in section 2, appropriate legislation for carrying into effect section 1; that is, pass legislation in aid of but not inconsistent with the provisions of section 1.  While the question is not directly before us at this time, we may say, as illustrating ''appropriate legislation'' (in addition to illus-

trations heretofore given) in aid of section 1, that to our mind there is at least some doubt as to whether the general laws, as they now exist, provide a method of collecting the fines mentioned in section 1, and a most serious doubt as to whether the "costs" may be collected under the law as it now exists. If so, supplemental legislation in aid of section 1 is necessary in order that the full penalty for its violation may be inflicted upon the transgressor of its provisions.

The appellant makes the further point that the amendment is not self-operating, for the reason, as he says, it fails "to fix the jurisdiction of the courts in such offenses, as well as to fix the place of imprisonment thereof." Paragraph 340, Civil Code, confers on the superior courts original jurisdiction in all cases and all proceedings in which jurisdiction is not vested by law exclusively in some other court. Paragraph 385, *Id.*, gives jurisdiction to justices of the peace of criminal cases other than felonies, where the punishment is a fine not exceeding $300, or imprisonment in the county jail not exceeding six months, or both. The penalty prescribed in the amendment is in excess of the jurisdiction of the justices' courts, and therefore the offense falls within the superior court's jurisdiction.

The place of imprisonment is in the county jail. The offense is defined as a misdemeanor. The Penal Code, paragraph 16, divides crimes into felonies and misdemeanors. Paragraph 17, *Id.*, provides that a felony is a crime punishable by death or imprisonment in the state prison, and that every other crime is a misdemeanor. The place of punishment grades the crime—if in the state prison, it is a felony; if in the county jail, it is a misdemeanor. Under the provisions of the Penal Code, all misdemeanors punishable by imprisonment, the imprisonment must be in the county jail. The authors of the prohibition amendment knew this; and, when they designated the violation of its provisions a misdemeanor, they adopted as the place of imprisonment the county jail.

There is also a rule that where a statute is silent as to the place of imprisonment, and any doubt exists as to whether it should be in the penitentiary or county or local jail, the defendant should have the benefit of the doubt and be incar-

cerated in the county or local jail.  *Ex parte Cain,* 20 Okl.
125, 93 Pac. 974.

We are therefore of the opinion that the amendment pro-
vides that the superior courts shall have jurisdiction of
offenses in violation of its provisions, and that the place of
imprisonment is definitely and certainly fixed as the county
jail.

The fact, if it be a fact, that the costs cannot be collected
under the existing laws, and that supplemental legislation
may be necessary to enforce their collection, does not affect
the features of the amendment that are clearly self-executing.
*Ex parte Cain, supra.*

As we understand the matter from the oral argument on
behalf of appellant and in his brief, this position is taken.
If the enactment in question be held not self-executing, and
therefore not in force and effect, it is constitutional.  Putting
it in another way, if the amendment must lie dormant and
be of no effect until some other action by some other agency
is or is not taken, then it is perfectly constitutional and un-
objectionable to appellant.  But if the amendment went into
effect on January 1, 1915, it is wholly void and utterly ob-
jectionable:

 First.   Because it is confiscatory, and therefore violative
of the fourteenth amendment to the Constitution of the
United States.

Second.   Because it imposes a burden on interstate com-
merce, and is therefore repugnant to the commerce clause of
the Constitution of the United States, for the reason that the
amendment prohibits the introduction of liquor into this state
for any and all purposes, without regard to the lawfulness or
unlawfulness of the purpose for which such liquor is intended
to be put.  It is argued that the amendment in question does
not even purport to prohibit the use of liquor in all cases.
For instance, it is claimed that the amendment does not make
the possession of liquor by one for his or her individual con-
sumption unlawful.  It is contended, therefore, that, if liquor
may be kept and put to a lawful use, it may be introduced into
this state for such lawful use, and that this part of the amend-
ment, in forbidding the introduction thereof for any and
all purposes, exceeds the assent, which Congress has given·
in what is known as the Webb-Kenyon Law (Act March 1,

1913, c. 90, 37 Stat. 699 [Fed. Stats. Ann. Supp. 1914, p. 208, U. S. Comp. Stats. 1913, sec. 8739]), to divest liquor of its interstate character only in certain cases, to wit, where it is intended, by any person interested therein, to be received, possessed, sold or in any manner used in violation of any law of such state. In fine, that it is the scope and intent of this act of Congress to be an auxiliary or aid to a state in the better enforcement of its prohibitory liquor laws by prohibiting the interstate shipment of liquor intended for any purpose denounced by such laws.

Third. Because the provision of the amendment prohibiting the introduction of liquor is so essentially a part of the amendment and so interdependent and blended with the other parts thereof that such unconstitutional feature, if it exists, is of such a character as to render the entire act void.

It is conceded by all: That the several states may not impose any burden upon interstate commerce, unless it is done with the express consent of Congress. That this function is by the Constitution committed exclusively to Congress. That shipments of liquor from one state to another state have been accorded the protection of interstate commerce by repeated decisions of the supreme court of the United States, whose judgment on such a matter is conclusive and binding on every other court. But the Congress of the United States has given its assent in certain cases. Its last enactment concerning the matter is what is known as the Webb-Kenyon law, which prohibits shipments of liquor into prohibition territory in certain cases. Speaking of this act, the brief submitted on behalf of the state says:

"It prohibits the transportation in interstate commerce from one state into another state of intoxicating liquor which is intended for anyone therein to be received, possessed, sold, or in any manner used in violation of any law of the state, to which it is sent."

In the brief submitted in behalf of the appellant it is observed, concerning the introduction feature of the amendment, thus:

"It has long been known that prohibition does not prohibit, unless the introduction be prevented. The prohibition law in Maine has been a farce for half a century. When passed in Georgia, the saloons of Atlanta remained open with a laugh,

because public sentiment was opposed to prohibition. In Memphis, Tennessee, the same conditions existed, except that the whisky bottles were openly exposed in the stores, and every human being knew that people were violating the law. In Alabama it was worse, so bad that the law was repealed at the next election, practically with the consent of those who believed in prohibition. Young men grew up with a notion, superinduced by these circumstances, that law was a farce, and became naturally improvident and reckless with respect to the sanctity of the law.''

To remedy the evil so forcibly proclaimed by appellant, and to aid the states in erasing a condition that all will concede appellant has strikingly presented, may have been the motive and purpose which actuated the Congress in passing the act. The question has been reviewed with great learning and discussed in elaborate detail in the following cases, which may be consulted: *United States* v. *Oregon-Washington R. & N. Co.* (D. C.), 210 Fed. 378; *State* v. *Grier* (Del. Gen. Sess.), 88 Atl. 579; *State* v. *Van Winkle* (Del. Gen. Sess.), 88 Atl. 807; *State* v. *United States Express Co.* (Iowa), 145 N. W. 451; *Atkinson* v. *So. Express Co.,* 94 S. C. 444, 48 L. R. A. (N. S.) 349, 78 S. E. 516; *Adams Express Co.* v. *Commonwealth,* 154 Ky. 462, 48 L. R. A. (N. S.) 342, 157 S. W. 908.

However interesting and instructive a discussion of this phase of the matter might be, and what, if any, constitutional objection may be urged to the introduction feature of the enactment, or what its application in any particular case when presented will be, are moot questions in this case. The appellant is not charged with introducing liquor into Arizona, but he is charged and has been convicted of unlawfully selling liquor in Arizona.

We believe it to be the unquestioned rule that a person cannot raise a constitutional objection to a part of a statute which is not applicable to his own particular case. The authorities are overwhelming to this effect. We cite but a few: *Southern R. Co.* v. *King,* 217 U. S. 524, 54 L. Ed. 868, 30 Sup. Ct. Rep. 594; *Engel* v. *O'Malley,* 219 U. S. 128, 55 L. Ed. 128, 31 Sup. Ct. Rep. 190; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 56 L. Ed. 1197, 32 Sup. Ct. Rep. 784; *Yazoo & M. Valley R. Co.* v. *Jackson Vinegar Co.,* 226 U. S. 217; *Rosenthal* v. *New York,* 226 U. S. 260, 57 L. Ed. 212,

Ann. Cas. 1914B, 71, 33 Sup. Ct. Rep. 27; *Darnell* v. *Indiana,* 226 U. S. 390, 57 L. Ed. 267, 33 Sup. Ct. Rep. 120; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 58 L. Ed. 713, 34 Sup. Ct. Rep. 359; *Missouri, Kansas & Texas R. Co.* v. *Cade,* 233 U. S. 642, 58 L. Ed. 1135, 34 Sup. Ct. Rep. 678; *Cram* v. *Chicago Burlington & Quincy Ry. Co.,* 85 Neb. 586, 26 L. R. A. (N. S.) 1028, 123 N. W. 1045, reported in 19 Ann. Cas. 170, with a note wherein the authorities are extensively collated.

Courts will not entertain an objection to the constitutionality of a statute, unless the objection is made by one whose rights have been in some way injuriously affected. Unless a person's rights are directly involved, such questions must necessarily be postponed, until they are met with upon the highway of adjudication, unless the unconstitutional feature, if it exists, is of such a character as to render the entire act void. *New York Central R. R.* v. *United States,* 212 U. S. 481, 53 L. Ed. 613, 29 Sup. Ct. Rep. 304; *People* v. *Huff et al.,* 249 Ill. 164, 94 N. E. 61; *Hammer* v. *State,* 173 Ind. 199, 140 Am. St. Rep. 248, 21 Ann. Cas. 1034, 24 L. R. A. (N. S.) 795, 89 N. E. 850.

Of course, if the enactment is wholly void, it is no law. It is as though it had never been enacted, and one who has suffered conviction under such an act will be heard to raise an objection as to its being entirely void, for his rights in such a case would be invaded. In a word, he could not be held to suffer a punishment, which is unauthorized by any law, without a clear invasion of his rights being committed. But a law may be valid in part and separable and capable of being executed so that the invalid part may be disregarded.

But without, even for the sake of argument, conceding that there is any merit whatever in the contention that any part of the act is invalid as placing an unauthorized burden on interstate commerce, we must at once dismiss the consideration of such a matter as unnecessary, and therefore improper to a decision of this cause, if, upon an examination of the amendment, its provisions are found to be separable, and the clause under which appellant was convicted be valid.

Are the several parts of this amendment capable of separation, so as to give effect to the legislative intent of the people?

"It is well settled that, if a statute is in part unconstitutional, the whole statute must be deemed invalid, if the parts

not held to be invalid are so connected with the general scope
of the statute that they cannot be separately enforced, or, if
so enforced, will not effectuate the manifest intent of the
legislature." *Int. Text-Book Co.* v. *Pigg*, 217 U. S. 91, 54
L. Ed. 678, 18 Ann. Cas. 1103, 27 L. R. A. (N. S.) 493, 30
Sup. Ct. Rep. 481.

"It will sometimes be found that an act of the legislature is
opposed, in some of its provisions, to the Constitution, while
others, standing by themselves, would be unobjectionable. So
the forms observed in passing it may be sufficient for some of
the purposes sought to be accomplished by it, but insufficient
for others. In any such case the portion which conflicts with
the Constitution, or in regard to which the necessary condi-
tions have not been observed, must be treated as a nullity.
Whether the other parts of the statute must also be adjudged
void because of the association must depend upon a con-
sideration of the object of the law, and in what manner
and to what extent the unconstitutional portion affects the
remainder. A statute, it has been said, is judicially held to
be unconstitutional, because it is not within the scope of legis-
lative authority; it may either propose to accomplish some-
thing prohibited by the Constitution, or to accomplish some
lawful and even laudable object, by means repugnant to the
Constitution of the United States or of the state. A statute
may contain some such provisions, and yet the same act, hav-
ing received the sanction of all branches of the legislature,
and being in the form of law, may contain other useful and
salutary provisions, not obnoxious to any just constitutional
exception. It would be inconsistent with all just principles
of constitutional law to adjudge these enactments void be-
cause they are associated in the same act, but not connected
with or dependent on others which are unconstitutional. . . .
The constitutional and unconstitutional provisions may even
be contained in the same section, and yet be perfectly distinct
and separable, so that the first may stand though the last fall.
The point is not whether they are contained in the same sec-
tion, for the distribution into sections is purely artificial, but
whether they are essentially and inseparably connected in
substance. If, when the unconstitutional portion is stricken
out, that which remains is complete in itself, and capable of
being executed in accordance with the apparent legislative in-

tent, wholly independent of that which was rejected, it must be sustained.'' Cooley's Constitutional Limitations, 7th ed., pp. 246-247.

''If one provision of an enactment is invalid and the others' valid, the latter are not affected by the void provision, unless they are plainly dependent upon each other, and so insepa-' rably connected that they cannot be divided without defeating the object of the statute. And the converse is true. The vicious part must be distinct and separable, and, when stricken out, enough must remain to be a complete act, capable of being carried into effect, and sufficient to accomplish the object of the law as passed, in accordance with the intention of the legislature. . . . It may be laid down generally as a sound proposition that one part of a statute cannot be declared void and leave any other part in force, unless the statute is so composite, consisting of such separable parts, that, when the void part is eliminated, another living, tangible part remains, capable by its own terms of being carried into effect, consistently with the intent of the legislature which enacted it in connection with the void part. If the legislative purpose, as expressed in the valid portions of the act, can be accomplished, independently of the unconstitutional portion, and, considering the entire act, it cannot be said that the legislature would not have passed the valid portion had it been known that the invalid portion must fail, effect will be given to so much as is good.'' Lewis' Sutherland, Statutory Construction, Vol. 1, pp. 578, 579.

Evidently the main purpose and controlling principle pervading the amendment is to prohibit the manufacture in Arizona and to prohibit the disposal thereof to any person in Arizona in any way, of ardent spirits, ale, beer, wine or intoxicating liquor of any kind. It is not questioned in this case that the state may, in the proper exercise of its police powers, enact such legislation. The power to regulate, restrain or prohibit whatever is injurious to the public health and morals is universally recognized. *Mugler* v. *Kansas,* 123 U. S. 623, 31 L. Ed. 205, 8 Sup. Ct. Rep. 273; *Bartemeyer* v. *Iowa,* 18 Wall. 129, 21 L. Ed. 929; *Crowley* v. *Christensen,* 137 U. S. 86, 34 L. Ed. 620, 11 Sup. Ct. Rep. 13; *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Eberle* v. *Michigan,* 232 U. S. 700, 58 L. Ed. 803, 34 Sup. Ct. Rep. 464; *Purity*

*Extract Co.* v. *Lynch,* 226 U. S. 192, 57 L. Ed. 184, 33 Sup.
Ct. Rep. 44; *Foster* v. *Kansas,* 112 U. S. 205, 28 L. Ed. 696,
5 Sup. Ct. Rep. 8, 97; *Kidd* v. *Pearson,* 128 U. S. 1, 32 L. Ed.
346, 9 Sup. Ct. Rep. 6; Black on Intoxicating Liquors, par.
37; Joyce on Intoxicating Liquors, par. 83; Woollen & Thorn-
ton's Law of Intoxicating Liquors, par. 93.

That legislation of such a character may to some seem un-
wise, unjust or impolitic does not authorize the courts to
interfere. When the law-making power has determined such
matters, such questions are thereby foreclosed. Nor is the
purpose and motive for the exercise of such legislative power
a subject for judicial inquiry. Questions relating to the wis-
dom, policy and expedience of such enactments are addressed
to the law-making branch of the government. Likewise we
may not concern ourselves with a consideration of the evils
which it is suggested may or may not arise from the execution
of the law, whether they be real or imaginary. Unless there
be some constitutional provision which prohibits the enact-
ment, the power is with the people to determine from time
to time the occasion, and what laws and regulations are neces-
sary and expedient for their benefit. The judicial depart-
ment does not make the laws, but is confined to ascertain if
the power to pass them exists, and, when such power is found,
then to construe and enforce them as made. A pronounce-
ment of the invalidity of an act or any part of an act of the
people in their legislative capacity is, and must always be,
approached with a delicacy which the situation invites.
Under our oaths as judges, this power must be exercised in
cases; but nevertheless it is our plain duty to uphold an act
of the law-making power whenever it is possible to do so.
Every presumption is in favor of its validity, and the con-
flict between the legislative act and a constitutional provision
must be very clear and utterly irreconcilable by any reason-
able interpretation before this court would be called upon
to annul the act or any separable part of it.

It is apparent that the amendment has in view at least two
objects: the first to prohibit the manufacture and traffic in
liquor in Arizona, and the second to prevent its introduction
into Arizona. It is perfectly obvious, to the mind of candid
inquiry: that the prohibition of the manufacture and traffic
in liquor in Arizona is the main purpose sought to be accom-

plished by the amendment, and that the prohibition concerning the introduction of liquor into Arizona is rather an auxiliary or as an incidental to the better accomplishment of the main design. That the prohibition of its introduction will be contributory to the accomplishment of the main object, to wit, the suppression of the liquor traffic. Yet these two provisions are in no sense so interblended and dependent one upon the other that each cannot be separately enforced, and, when so enforced, effectuate the manifest intent of the people. In other words, the two objects may be divided without in any wise defeating the object of the amendment. That part of the amendment which appellant seeks to urge an objection to on constitutional grounds may be stricken out, and still the main purpose of the act would be complete, and capable of being carried into effect, so as to accomplish the object of the law as passed in accordance with the intention of the people.

Even if Congress had not heretofore given its assent to the state to place a burden on interstate commerce in the particulars stated, and the importation feature had been entirely eliminated from the amendment, we feel persuaded the people would have adopted it, whether the importation of liquor could have been prevented or not. If the introduction feature of the act was stricken out, it might burden somewhat the facility with which the main object could be obtained. This, however, would be only incidental to the execution of the main object of the law, but that would not render it incapable of accomplishment. What we have said must not be taken as any intimation whatever that any part of the act is subject to any constitutional objection. We have adverted to the question for the purpose of showing that appellant is in no position to urge such objections, if any such exist. He is charged with the sale of a bottle of whisky, and not with the importation of it, so that he is in nowise affected by the alleged unconstitutionality of the law in the feature complained of.

Appellant contends: that, if the constitutional amendment is held self-executing, it then becomes confiscatory. It is assumed that saloon-keepers have procured privilege licenses to conduct their business for specified lengths of time. That the money required to be paid for such licenses was

paid and accepted in consideration of the granting of the privilege to engage in the business for the full length of time specified. That in some instances, at least, the time specified did not expire until after January 1, 1915, and the licensee has no remedy by which he can recover the *pro rata* part of the money so paid for such license; therefore such money is confiscated. That many of these saloons have leases which run for years. These leases were taken for the purpose of conducting a saloon business on the leased premises. If the amendment goes into effect on January 1, 1915, these leases are valueless to them, and yet they must continue paying the rentals thereunder. They are given no time in which to arrange or otherwise use or dispose of such leases. Appellant contends: that for these reasons and to this extent the law is confiscatory of property rights. That the liquor dealers had on hand many thousands of dollars' worth of stock when the amendment was adopted, December 15, 1914, as officially determined. If the amendment is held to be self-executing and in effect January 1, 1915, the stock on hand cannot be disposed of, and the money invested in liquors, *et cetera,* would be lost, and would result in a deprivation of property without due process of law and amount to absolute confiscation of property.

A license for the sale of liquor is not a contract between authority, federal, state or municipal, granting it, and the person to whom it is issued, in any such sense as to be within the protection of constitutional guaranties. 23 Cyc. 110, and cases supporting the principle cited in note 3.

A license for the sale of liquor is in effect a mere permit, affording protection to the holder against legal animadversion for acts which, without its sanction, would be illegal and punishable. *Commonwealth* v. *Luck,* 2 B. Mon. (Ky.) 296.

All the privileges permitted by the license, and all the protection given thereby, although yet unexpired, are canceled and revoked by the repeal of the law which authorized its grant. *Pleuler* v. *State,* 11 Neb. 547, 10 N. W. 481; *State* v. *Holmes,* 38 N. H. 225; *State* v. *Cooke,* 24 Minn. 247, 31 Am. Rep. 344; *Ex parte Lynn,* 19 Tex. App. 293; *Robertson* v. *State,* 12 Tex. App. 541.

The adoption of a constitutional provision entirely prohibiting the manufacture and sale of intoxicating liquors

repeals and annuls all existing laws which permitted such manufacture and sale under licenses or other restrictions. *Prohibitory Amendment Cases,* 24 Kan. 700; *State* v. *Tonks,* 15 R. I. 385, 5 Atl. 636.

The repeal and amendment of the laws under which the granting of the license was authorized withdraws the protection given by the license from criminal liability for continuing in the business. Whether the licensee is furnished a remedy by which he can recover the unused portion of the money paid for the license is a question not involved in this case. Whether he has a remedy we do not decide. It is clear that he has no right to continue the business of selling intoxicating liquors in violation of law to the end of the license term, in order that he may earn profits therefrom. If he is injured to the extent of the unused portion of the license money paid by him, he cannot set up that injury in mitigation or extenuation of the punishment for violating a criminal law. The right to recover for the injury, loss of a part of license money paid, is not triable in a criminal action, but he must resort for relief to a tribunal exercising its civil jurisdiction.

The consequential depreciation in value of the stock of intoxicating liquors on hand arising from the going into effect of the prohibition amendment, and the supposed loss of rental paid by dealers for premises leased for the purpose of use in carrying on saloon businesses have reference to property rights. By means of the constitutional amendment taking effect, such property may depreciate in value; that is, the owner is certainly deprived of an opportunity to make a profit by conducting a certain business on leased premises, and thereby disposing of his stock of intoxicating liquors at a profit. It is well-settled law that a statute absolutely prohibiting, within the limits of the state, the manufacture and sale of intoxicating liquors as a beverage is a lawful exercise of the police power of the state, and is not open to constitutional objection, either on considerations of natural right or of the specific limitations of state powers. 23 Cyc. 77. Such a statute, although it may deprive persons of the right to pursue a business which was previously lawful and diminish the value of property devoted to such business, cannot be said to deprive them of their liberty or property without due process of law. Nor does it for similar reasons violate the prohibition against

impairing the obligations of contracts, nor that which forbids discrimination against citizens of other states or citizens of the United States; and such a law, in so far as it prohibits the sale of liquors in existence at the time of its passage, is not an *ex post facto* law, since, if it lessens the value of such liquors, such civil consequence does not make it retroact criminally in such sense as to bring it within the constitutional prohibition against laws of that character. 23 Cyc. 78, and authorities cited in the notes. If a statute is not open to such objections, certainly a state constitutional provision is free from them.

The question of a confiscation of the license money, the lease rental, and the depreciation of the value of stocks of liquor are civil consequences flowing from the revocation by the state of the license to engage in the liquor traffic, and have no bearing upon the right to sell intoxicating liquor after the license has been revoked.

Upon a contest for the recovery of relief from an injury resulting to the property rights of one whose license has been revoked by the constitutional amendment going into effect at a time before a license expired, leaving on hand large stocks of liquors and leased premises, then the question, as to such injured persons, whether the law was confiscatory in effect, might be litigated and determined as bearing upon property rights, provided the state would permit such an action to be brought and maintained against it for such purpose. In which event the cases cited by appellant would have a bearing upon the question. We do not hesitate to hold that the state, in the lawful exercise of its police power, could and did revoke the license of every person theretofore authorized to sell intoxicating liquors in Arizona, and such revocation went into effect on January 1, 1915.

That the appellant and others theretofore lawfully engaged in the liquor business suffered an injury to their property rights because their licenses were revoked is and can be no defense justifying a violation of the law. If the state, by revoking their license, inflicted an actionable injury upon their property rights, if they have a remedy, certainly that remedy does not consist of reinstating their license and privilege to continue in business. The fact that appellant and others will suffer an injury to their property rights if the amend-

ment goes into effect on January 1, 1915, whether they have a remedy for the injury or not is no sufficient reason to prevent the constitutional provision from taking effect on January 1, 1915.

Before concluding we might observe: That it was sought by various interested parties to restrain by injunction the enforcement of this amendment by the judgment of a special tribunal organized for the district of Arizona, under the laws of the United States, and which tribunal, consisting of three United States judges, heard the matter in Los Angeles, California. That upon bills in equity filed for that purpose, and mainly grounded on alleged irreparable injury to the property rights of complainants, which would result from an enforcement of the law, and presenting for determination every question which is now presented to this court by appellant, the United States court assumed jurisdiction to pass upon the matter in its entirety, and rendered its judgment in those cases contrary to the contentions here pressed by this appellant in each and every particular.

Judgment affirmed.

---

NOTE.—As to self-executing constitutional provisions, see note in 16 L. R. A. 281.

On the question who may raise objection that a statute contains an unconstitutional discrimination, see note in 32 L. R. A. (N. S.) 954.