Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/19/2025 09:10 AM CDT

BAKHODIR KHAITOV, APPELLANT, V. GREATER
OMAHA PACKING CO., INC., APPELLEE.

___ N.W.3d ___

Filed September 19, 2025.    No. S-24-581.

1. **Jurisdiction: Appeal and Error.** The question of appellate jurisdiction is a question of law.
2. **Judgments: Appeal and Error.** Appellate review of a ruling on a motion for directed verdict is de novo on the record.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
4. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
6. **Jurisdiction: Final Orders: Appeal and Error.** Read together, Neb. Rev. Stat. § 25-1911 (Reissue 2016) and Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2024) generally prescribe that for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from either a judgment or decree rendered or from a final order.
7. **Final Orders: Appeal and Error.** To constitute a final order under Neb. Rev. Stat. § 25-1902(1)(a) (Cum. Supp. 2024), three requirements must be met: The order must (1) affect a substantial right, (2) be entered in an action, and (3) effectively determine the action and prevent a judgment.
8. **Final Orders.** To be a final order under Neb. Rev. Stat. § 25-1902(1)(a) (Cum. Supp. 2024), an order must dispose of the whole merits of the case and must leave nothing for further consideration of the court.
9. ____. When an order in an action completely disposes of the subject matter of the litigation, it affects a substantial right with finality because it conclusively determines a claim or defense.

10. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

11. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.

12. **Legislature: Intent.** Legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.

13. **Pleadings.** An affirmative defense raises a new matter which, assuming the allegations of the complaint to be true, constitutes a defense to the merits of a claim.

14. ____. An affirmative defense generally avoids, rather than negates, the plaintiff's prima facie case.

15. **Pleadings: Appeal and Error.** An affirmative defense must be raised in the party's responsive pleading to be considered in the trial court and on appeal.

16. **Pleadings: Proof.** The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so, they cannot recover upon mere argument alone.

17. **Statutes.** When a statute has exemptions laid out apart from the prohibitions, and the exemptions expressly refer to the prohibited conduct, the exemptions ordinarily constitute affirmative defenses that are entirely the responsibility of the party raising them.

18. ____. Nebraska follows the common-law rule of statutory construction that where a party relies upon a statute which contains an exception in the enacting clause, such exception must be negatived; but where the exception occurs in a proviso or in a subsequent section of the act, such exception is matter of defense and need not be negatived.

19. **Courts: Legislature: Statutes: Presumptions.** Courts presume the Legislature is conversant with the established rules of statutory construction and considers such rules when enacting legislation.

20. **Fair Employment Practices: Pleadings: Proof.** The exception in Neb. Rev. Stat. § 48-1114(2)(e) (Reissue 2021) is an affirmative defense that an employer must both plead and prove in an action alleging a violation of § 48-1114(1)(d).

21. **Appeal and Error.** An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal for that argument to be considered.

22. ____. An appellate court always has the option to notice plain error that was not complained of at trial or on appeal but that is plainly

evident from the record and is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

23. **Judgments: Verdicts.** Entering judgment in conformity with the verdict under Neb. Rev. Stat. § 25-1313 (Cum. Supp. 2024) is a ministerial duty.

24. **Judgments: Verdicts: Directed Verdict.** Under the terms of Neb. Rev. Stat. § 25-1315.02 (Reissue 2016), where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict.

25. ____: ____: ____. The requirement to file a timely motion for judgment notwithstanding the verdict is not removed just because the court expressly reserved ruling on a motion for directed verdict before submitting the case to the jury.

26. ____: ____: ____. Under the framework of Neb. Rev. Stat. § 25-1315.02 (Reissue 2016), even when a trial court expressly reserves ruling on a motion for directed verdict at the close of all the evidence and submits the matter to the jury, a timely motion for judgment notwithstanding the verdict is required for a court to engage in a later determination of the legal questions raised in an earlier motion for directed verdict.

27. **Judgments: Verdicts: Directed Verdict: Time.** The plain language of Neb. Rev. Stat. § 25-1315.02 (Reissue 2016) makes it wholly unnecessary for a trial court to expressly reserve the decision on a motion for directed verdict made at the close of all the evidence, because the statute makes the reservation automatic, subject to the filing of a motion for judgment notwithstanding the verdict no later than 10 days after the entry of judgment.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Reversed and remanded with directions.

Michael L. Moran and Adam P. Smith, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Daniel J. Fischer, of Koley Jessen, P.C., L.L.O., for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Stacy, J.

In this action for wrongful termination under the Nebraska Fair Employment Practice Act (NFEPA),[1] Bakhodir Khaitov appeals from an order granting his former employer's motion for directed verdict at the close of all the evidence. Khaitov's lawsuit alleged his employer retaliated against him, and eventually fired him, because he discussed his compensation with his supervisor and asked for an increase in his annual bonus. Khaitov alleged this violated § 48-1114(1)(d), which makes it an unlawful employment practice for an employer to discriminate against an employee because he or she "has inquired about, discussed, or disclosed information regarding employee wages, benefits, or other compensation."

The case was tried to a jury. At the close of all the evidence, the employer moved for a directed verdict, arguing that Khaitov could not establish a violation of § 48-1114(1)(d) as a matter of law because the conversation about compensation occurred during working hours and thus fell within an exception in § 48-1114(2)(e), which states that "[n]othing in . . . subdivision (1)(d) of this section shall . . . [p]ermit an employee to discuss information regarding employee wages, benefits, or other compensation during working hours, as defined in existing workplace policies, or in violation of specific contractual obligations." The court took the motion for directed verdict under advisement and submitted the case to the jury.

The jury returned a verdict in favor of Khaitov and awarded him past lost wages and general damages in the total sum of $660,000. But the court did not thereafter enter judgment in conformity with the jury's verdict and instead treated the motion for directed verdict as "still under advisement." The

---

[1] See Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 2021).

court later granted that motion, reasoning that Khaitov failed to establish a violation of § 48-1114(1)(d) as a matter of law because he had not presented evidence to "contradict[]" the exception in § 48-1114(2)(e).

Khaitov appeals the directed verdict ruling, assigning error to the district court's reasoning but not to the postverdict procedure it followed. Khaitov's primary argument on appeal is that in a case alleging a violation of § 48-1114(1)(d), the exception in § 48-1114(2)(e) is an affirmative defense that must be pled and proved by the employer, not something to be disproved by the employee.

We moved this appeal to our docket to consider that issue. In addition, we address the procedure required by Neb. Rev. Stat. § 25-1315.02 (Reissue 2016) when a court defers ruling on a motion for directed verdict at the close of all the evidence and submits the case to the jury. For reasons we will explain, we reverse the district court's order granting a directed verdict and remand the cause for further proceedings with directions to enter a judgment in conformity with the jury's verdict.

## I. BACKGROUND

### 1. Lawsuit

In May 2021, Khaitov filed this civil action against Greater Omaha Packing Co., Inc. (GOPC), in the district court for Douglas County. The complaint was styled as three separate claims, but after a successful motion for judgment on the pleadings, which Khaitov does not challenge on appeal, only Khaitov's NFEPA claim for retaliation and wrongful termination proceeded to trial.

Regarding that claim, Khaitov alleged he was employed by GOPC as vice president of finance. In November 2020, he discovered that his annual performance bonus was less than the bonuses given to other "peer executives with less responsibility" at GOPC. Khaitov requested a meeting with his

supervisor, Henry Davis, who was also the majority owner and chief executive officer of GOPC, to discuss the situation and request a larger bonus. Khaitov alleged that after this discussion with Davis, GOPC retaliated against him and eventually fired him in violation of § 48-1114(1)(d). Khaitov's complaint prayed for compensatory damages, including past and future lost wages, general damages for pain and suffering, attorney fees, and prejudgment and postjudgment interest.

GOPC's answer denied retaliating against Khaitov or terminating his employment because he discussed his compensation with Davis. Instead, GOPC alleged Khaitov either quit voluntarily or was terminated for performance issues. GOPC's answer did not allege that any provision of § 48-1114 provided an affirmative defense to the action.

## 2. JURY TRIAL

A 5-day jury trial was held in December 2023. Consistent with the allegations in his complaint, Khaitov's theory at trial was that he engaged in protected conduct under § 48-1114(1)(d) by discussing his bonus compensation with Davis in November 2020 and that GOPC retaliated against him, eventually terminating his employment for engaging in such conduct. And consistent with its answer, GOPC's defense at trial was that Khaitov either voluntarily resigned or was terminated for poor work performance.

The evidence at trial showed that Khaitov began working for GOPC in 2019 and that in July 2020, he was promoted to vice president of finance with an annual salary of $190,000. While working for GOPC, Khaitov helped modernize the company's accounting and reporting procedures, and he was involved with "Project Unicorn"—an internal project focused on preparing GOPC for a potential sale. Khaitov's role within Project Unicorn was to gather financial information on GOPC's performance over the prior 3 years and provide it to outside consultants so a "Quality of Earnings" report could be prepared.

At the end of each fiscal year, GOPC gave discretionary performance bonuses to some employees. In 2020, all discretionary bonus decisions were made by department managers and approved by Davis. Davis shared the list of the annual performance bonuses with Khaitov, whose responsibilities included putting the bonus information on the company's balance sheet before the books were closed.

### (a) Khaitov Requests Bonus

In September 2020, before the annual discretionary bonuses for 2020 had been announced, Khaitov sent Davis a letter asking to be considered for a $500,000 annual bonus. Because Khaitov's role required his extensive involvement in Project Unicorn, Davis instead offered Khaitov a "Change of Control Bonus Agreement" (Bonus Agreement), under which Khaitov would receive a $500,000 bonus in the event GOPC was sold—assuming he remained employed at GOPC. Khaitov accepted the offer and signed the Bonus Agreement on October 6, 2020. Pursuant to its terms, any amendment to the Bonus Agreement required the consent of both parties.

### (b) Khaitov Requests Additional Bonus

In November 2020, Davis made decisions about the 2020 bonuses and gave the list to Khaitov. While entering the bonus information into GOPC's books, Khaitov noticed that his bonus was $75,000 and that other salaried executives at GOPC received higher bonuses. Khaitov requested a meeting with Davis to discuss the amount of his 2020 bonus in relation to the other executives.

Khaitov and Davis met at approximately 1 p.m. on Friday, November 27, 2020. Khaitov described that day as a "regular workday" at GOPC and said the meeting with Davis occurred "a little after lunch." Khaitov recorded the meeting on his cellular phone without Davis' consent. At trial, an audio recording of this meeting was introduced into evidence and played for the jury.

During the November 27, 2020, meeting, Khaitov outlined his contributions to GOPC and asked Davis to consider adjusting his annual bonus to reflect the larger bonuses received by some of the other salaried executives at GOPC. Several times, Khaitov said he felt undervalued by Davis; Davis responded to those concerns by saying things like, "I don't have one complaint about you" and "I want you to know I think you're unbelievable. You are excellent . . . I think you are very, very good at what you do, the best I've ever seen." But when Khaitov asked that his bonus be increased to $200,000, Davis responded, "You think you're worth 390[,000]?" Davis told Khaitov that if he wanted to compare himself to the other GOPC executives, then perhaps the Bonus Agreement should be withdrawn. Khaitov replied that he viewed the Bonus Agreement and the annual bonuses as separate things, adding that although the $500,000 Bonus Agreement was generous, it was also a "big if." Davis then stated, "So you think you're worth 690[,000]?" and suggested Khaitov was being "unrealistic." Khaitov asked if a $150,000 annual bonus for 2020 was feasible, and Davis said he would look into comparable salaries at other companies to decide whether Khaitov was being undercompensated.

Davis documented the November 27, 2020, meeting in an email to Khaitov dated the same day. That email recounted Khaitov's request for an increase to his 2020 bonus and stated:

> You mentioned during our conversation the bonuses that [other GOPC executives] are to receive this year and you compared those to yours. You PROMISED me that the bonus information I gave you would be kept confidential. I did not expect you to use that information to craft an argument as to why you deserve a higher bonus.
>
> . . . In addition to using that information in an unprofessional manner you did not factor in the $500,000 that I had offered you in the event of a sale. I am

investigating if that type of offer of [$500,000] is common to someone in a similar position as you.

Davis' email confirmed that after researching comparable salary ranges and bonuses agreements, he would decide whether to adjust Khaitov's annual performance bonus or propose changes to the Bonus Agreement. It is undisputed that GOPC did not thereafter make any adjustments to Khaitov's bonus for 2020, but it did propose changes to the Bonus Agreement.

### (c) GOPC Seeks to Amend
### Bonus Agreement

On April 22, 2021, Khaitov was called into a meeting with GOPC's new president, Mike Drury, and GOPC's in-house counsel, Mark Theisen. Khaitov once again secretly recorded this meeting on his cellular phone, and the recording was received into evidence and played for the jury.

During the April 22, 2021, meeting, Drury and Theisen asked Khaitov to sign an amended Bonus Agreement, under which Davis had the sole discretion to decide the amount of Khaitov's bonus in the event of a sale. As an explanation for amending the Bonus Agreement, Theisen mentioned two instances in the prior several months where Davis had been disappointed in Khaitov's performance and referred to "some of the discussions that were held for fiscal year end 2020 bonuses involv[ing] you and [Davis]." Khaitov agreed to review the amended Bonus Agreement and left the meeting.

### (d) Khaitov Refuses to Sign Amended
### Bonus Agreement

Roughly 1 week later, on Wednesday, April 28, 2021, Khaitov notified Drury by email that he would not sign the amended Bonus Agreement, and he requested clarification regarding his position with GOPC in light of that decision. Drury, Theisen, and Khaitov had a meeting later that day to address the issue.

Khaitov again secretly recorded the meeting, and the recording was admitted into evidence and played for the jury.

During the April 28, 2021, meeting, Drury told Khaitov that because he refused to sign the amended Bonus Agreement, "we've come to a crossroads, where we need to have a separation." Drury asked Khaitov to work through the end of the following week to ease the transition. Khaitov replied that he did not want to prolong his fate; he requested a termination letter and left the meeting. With his cellular phone still recording, Khaitov walked back to his office where he had another discussion with Drury. In that discussion, Drury told Khaitov that a termination letter had been drafted recommending that Khaitov stay until Friday of that week. Khaitov responded, "Okay."

Drury testified that he understood Khaitov's response to mean he was willing to stay and work for 2 additional days, so he sent an email to Khaitov confirming that understanding. Khaitov replied to Drury's email stating that because he had been terminated, he would be leaving GOPC immediately. Theisen, who had been copied on the emails, responded with an email to Khaitov stating it was Khaitov's decision to leave.

(e) Motions for Directed Verdict

Once Khaitov rested his case in chief, GOPC moved for a directed verdict. Outside the presence of the jury, GOPC argued, for the first time, that Khaitov's November 2020 discussion with Davis was not protected conduct under § 48-1114(1)(d) because it occurred during working hours and thus fell within the exception in § 48-1114(2)(e), which states: "(2) Nothing in . . . subdivision (1)(d) of this section shall . . . (e) Permit an employee to discuss information regarding employee wages, benefits, or other compensation during working hours, as defined in existing workplace policies, or in violation of specific contractual obligations[.]"

GOPC argued the undisputed evidence showed that the November 2020 discussion between Khaitov and Davis occurred during "a regular workday . . . just after lunch" and that therefore, Khaitov could not prove a violation of § 48-1114(1)(d) as a matter of law. The court took the motion under advisement over the evening recess, explaining, "[T]his is the first time I've heard this."

The next morning, the court overruled GOPC's motion for directed verdict without elaborating on its reasoning. GOPC then rested its case without offering evidence, and Khaitov had no rebuttal. At the close of all the evidence, GOPC moved again for a directed verdict on the sole ground that Khaitov's discussion with Davis about compensation occurred during working hours and therefore was not protected conduct under § 48-1114(1)(d) because it fell within the exception in § 48-1114(2)(e). Without hearing additional argument, the court advised counsel it was taking the renewed motion under advisement and submitting the case to the jury.

### 3. JURY INSTRUCTIONS AND VERDICT

The court's jury instructions included a definition of "protected conduct" under the NFEPA that generally recited the statutory language of both § 48-1114(1)(d) and § 48-1114(2)(e). On appeal, neither party challenges the jury instructions, so we do not discuss them further.

After more than 6 hours of deliberation, the jury returned a general verdict in Khaitov's favor, awarding him $370,440 in past lost wages and $289,560 in general damages. The appellate record does not include a verbatim transcript of this portion of the trial proceedings, but other entries in the appellate record indicate the verdict was returned in open court in the presence of the parties, after which the jury was excused.

The appellate record includes a file-stamped copy of the completed verdict form, signed by the jurors on December 11, 2023, and entered by the clerk of the district court on

December 12. But the appellate record does not contain a judgment in conformity with the jury's verdict,[2] and the parties agree that no such judgment was ordered or entered in this case. Instead, the court advised the parties that GOPC's motion for directed verdict was "still under advisement" and that additional argument on that motion would occur at a later date.

### 4. Posttrial Motions

#### (a) Khaitov's Posttrial Motion

A few days after the verdict was returned, Khaitov filed a motion seeking an equitable award of front pay to be determined by the court and a notice claiming entitlement to prejudgment interest on the jury verdict under Neb. Rev. Stat. § 45-103.03 (Reissue 2021). The motion was noticed for hearing on January 5, 2024, but GOPC successfully moved to continue that hearing, asserting that Khaitov's posttrial filings were "premature" because the court had not yet ruled on GOPC's motion for directed verdict at the close of all the evidence.

#### (b) GOPC's Posttrial Motion

Several weeks after the verdict was returned, and before any judgment had been entered in conformity with the verdict, GOPC filed what it titled in part a "Motion for Ruling on Pending Motion for Directed Verdict." This motion was filed January 5, 2024, and it was taken up at a hearing on February 1.

At the hearing, GOPC relied on the exception in § 48-1114(2)(e) to argue that employees who want to have protected discussions about compensation must do so during "lunch breaks and breaks and things like that." GOPC again argued it was entitled to a directed verdict based on evidence

---

[2] See Neb. Rev. Stat. § 25-1313 (Cum. Supp. 2024).

that the November 2020 discussion between Khaitov and Davis occurred during "normal working hours" on a "normal working day," and therefore, Khaitov failed to prove the discussion fell outside the exception.

In response, Khaitov argued the motion for directed verdict should be overruled because the exception in § 48-1114(2)(e) creates an affirmative defense to an alleged violation of § 48-1114(1)(d), and GOPC waived that defense by failing to plead or otherwise raise it before trial. Alternatively, Khaitov argued the evidence presented factual disputes as to whether the November 2020 discussion with Davis fell within the exception created by § 48-1114(2)(e), and therefore the issue was properly submitted to the jury and could not be decided as a matter of law.

### (c) District Court Sustains Motion for Directed Verdict and Dismisses Action

Approximately 7 months after the jury returned its verdict, the district court ruled on the motion for directed verdict it had previously taken under advisement. In a written order entered July 15, 2024, the court summarily rejected Khaitov's argument that the provisions of § 48-1114(2)(e) create an affirmative defense. Instead, the court treated the exception in § 48-1114(2)(e) as something Khaitov needed to disprove in order to establish that he was engaged in protected conduct under § 48-1114(1)(d). The court reasoned:

> This [c]ourt understands the importance of a jury verdict, however, even though the jury considered this issue, there was no evidence that contradicts [the] fact that [the November 2020] discussion between [Khaitov] and [Davis] occurred during "working hours" of [GOPC]. This [c]ourt cannot ignore that fact. As such, this [c]ourt finds that this discussion about [Khaitov's] bonus is excluded from those discussions [protected under] § 48-1114(1)(d)

. . . and there can be no actionable discrimination as to the discussion regarding wages.

For these reasons, this [c]ourt sustains [GOPC's] Motion for Directed Verdict at the conclusion of all evidence. This [c]ourt does not address the other issues raised by [GOPC] or [Khaitov] as this ruling resolves this matter. As such, this matter is hereby dismissed.

Khaitov filed a timely notice of appeal, and we moved the case to our docket on our own motion. Given the unusual procedural posture of this appeal, we requested supplemental briefing addressing our appellate jurisdiction. We also asked the parties to address whether § 25-1315.02 requires a timely motion for judgment notwithstanding the verdict as a necessary prerequisite for a court to reexamine, postverdict, the legal questions raised by a motion for directed verdict at the close of all the evidence. Both parties submitted supplemental briefs addressing these issues, which we have carefully reviewed.

## II. ASSIGNMENTS OF ERROR

Khaitov assigns, reordered and restated, that the district court erred in sustaining GOPC's motion for directed verdict based on the exception in § 48-1114(2)(e) because (1) the exception is an affirmative defense that GOPC failed to plead or otherwise raise before trial and therefore waived and (2) even if the exception is not an affirmative defense, the evidence at trial created a factual issue for the jury as to whether the exception applied.

## III. STANDARD OF REVIEW

[1] The question of appellate jurisdiction is a question of law.[3]

---

[3] *Saint James Apt. Partners v. Universal Surety Co.*, 316 Neb. 419, 5 N.W.3d 179 (2024).

[2] Appellate review of a ruling on a motion for directed verdict is de novo on the record.[4]

[3] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[5]

[4] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[6]

## IV. ANALYSIS

### 1. Jurisdiction

[5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7] Khaitov has appealed from an order granting a motion for directed verdict made at the close of the evidence and dismissing the action, but the procedural posture is unusual because the order was entered after the jury had returned a verdict in favor of Khaitov. We have found no Nebraska appellate case addressing a similar circumstance. Although we address the propriety of the court's procedure later in our opinion, we must first determine whether we have jurisdiction to review the order being appealed.

[6] Neb. Rev. Stat. § 25-1911 (Reissue 2016) states that "[a] judgment rendered or final order made by the district court

---

[4] See *State v. Bruna*, 12 Neb. App. 798, 829, 686 N.W.2d 590, 615 (2004) ("[w]hether a trial court should have granted a motion for directed verdict at the close of the State's case is a question of law, regarding which an appellate court must reach a conclusion independent of the determination reached by the court below"). Accord *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024) (holding that appellate review of ruling on motion for judgment notwithstanding verdict is de novo on the record).

[5] *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025).

[6] *State ex rel. Hilgers v. Evnen*, 318 Neb. 803, 19 N.W.3d 244 (2025).

[7] *Id*.

may be reversed, vacated, or modified for errors appearing on the record." Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2024) describes the procedure for obtaining a "reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court." Together, these statutes generally prescribe that for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from either a judgment or decree rendered or from a final order.[8]

Here, the parties agree the district court did not enter a judgment in conformity with the jury's verdict,[9] and the appellate record does not contain any signed written document styled as a judgment under Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2024). Instead, Khaitov has appealed from an order that granted a directed verdict in favor of GOPC and dismissed the action, but the order was entered after the jury returned a verdict in favor of Khaitov and awarded monetary damages. The threshold jurisdictional question presented by these unusual facts, then, is whether Khaitov has appealed from a final order.

Neb. Rev. Stat. § 25-1315.03 (Reissue 2016) expressly states that an order "entering judgment as provided in section 25-1315.02 . . . is an appealable order." Section 25-1315.02, in turn, refers broadly to motions for directed verdict made at the close of all the evidence, motions for judgment notwithstanding the verdict, and motions for new trial. We do not appear to have previously applied the provisions of § 25-1315.03 to find that an order granting a motion for directed verdict made at the close of all the evidence is final and appealable. But we need not decide the issue in this case

---

[8] See *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025). But see Neb. Rev. Stat. § 25-1315 (Reissue 2016) (when more than one claim for relief is presented in action, or when multiple parties are involved, court may direct entry of final judgment as to one or more but fewer than all of claims or parties under specified circumstances).

[9] See § 25-1313.

either, because we conclude the order at issue is a final order under Neb. Rev. Stat. § 25-1902 (Cum. Supp 2024).

[7,8] In their supplemental briefing, both parties suggest the order granting a directed verdict was a final order under § 25-1902(1)(a), and we agree. To constitute a final order under § 25-1902(1)(a), three requirements must be met: The order must (1) affect a substantial right, (2) be entered in an action, and (3) effectively determine the action and prevent a judgment. We have also said that to be a final order under this category, an order "'must dispose of the whole merits of the case and must leave nothing for further consideration of the court.'"[10] Although orders meeting all these requirements are rare,[11] we have no difficulty concluding the order of July 15, 2024, which directed a verdict in favor of GOPC and dismissed the action in its entirety, is a final order under § 25-1902(1)(a).

[9] When an order in an action completely disposes of the subject matter of the litigation, it affects a substantial right with finality because it conclusively determines a claim or defense.[12] The court's July 15, 2024, order was entered in an action brought under the NFEPA, it affected Khaitov's substantial rights with finality by directing a verdict in favor of GOPC and dismissing the action in its entirety, and it effectively determined the action and prevented the entry

---

[10] See *O'Connor v. Kaufman*, 255 Neb. 120, 122, 582 N.W.2d 350, 353 (1998) (quoting *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994)).

[11] See, generally, *D&M Roofing & Siding v. Distribution, Inc.*, 316 Neb. 952, 7 N.W.3d 868 (2024). See, also, John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239, 324 (2001) (noting it is "extremely difficult to envision an order that would satisfy all three requirements" of § 25-1902(1)(a)).

[12] See *Schaaf v. Schaaf*, 312 Neb. 1, 6, 978 N.W.2d 1, 7 (2022) ("[a]n order that completely disposes of the subject matter of the litigation in an action or proceeding both is final and affects a substantial right because it conclusively determines a claim or defense").

of a judgment in conformity with the jury's verdict. Having concluded that the July 15 order directing a verdict in favor of GOPC was a final order under § 25-1902(1)(a), we turn to the legal issues presented for appellate review.

## 2. Ruling on Directed Verdict

Khaitov assigns and argues that the district court's directed verdict ruling was erroneous for two reasons. First, he argues the court erred in treating the exception in § 48-1114(2)(e) as something Khaitov had to disprove in his case in chief, rather than an affirmative defense that GOPC had to plead and prove. Alternatively, Khaitov argues that even if the exception in § 48-1114(2)(e) is not an affirmative defense, the evidence at trial created a jury issue as to whether the compensation discussion between Khaitov and Davis fell within the exception, so the matter was properly submitted to the jury. Because we find Khaitov's first assignment is dispositive, we do not address his second assignment.

### (a) § 48-1114(2)(e) Is Affirmative Defense

Khaitov's primary argument on appeal is that the provisions of § 48-1114(2)(e) create an affirmative defense to a claim of wrongful termination under § 48-1114(1)(d) and that therefore, the trial court erred by treating subsection (2)(e) as an element of Khaitov's prima facie case. Additionally, relying on the settled rule that an affirmative defense is waived if not raised in the party's responsive pleading,[13] Khaitov argues that any affirmative defense under § 48-1114(2)(e) was waived by GOPC because it was not pled in the operative answer and that GOPC should not have been permitted to raise the defense for the first time in a motion for directed verdict.

GOPC disagrees. It argues the exception in § 48-1114(2)(e) is not an affirmative defense, but, rather, is "an integral part

---

[13] See, *Haffke v. Signal 88*, 306 Neb. 625, 947 N.W.2d 103 (2020); *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016). See, also, Neb. Ct. R. Pldg. § 6-1108(c)(1) (codified 2008).

of the definition of protected activity"[14] under § 48-1114(1)(d). In other words, GOPC contends that to establish his retaliation claim under the NFEPA, Khaitov had to prove that GOPC engaged in an unlawful employment practice under § 48-1114(1)(d) and also had to disprove the applicability of the exception in § 48-1114(2)(e).

These arguments present a very narrow question of statutory interpretation: Do the provisions of § 48-1114(2)(e) create an affirmative defense to a claim alleging a violation of § 48-1114(1)(d) or state a material element of such a claim? Stated differently, which party in an action alleging a violation of § 48-1114(1)(d) bears the burden of proving, or disproving, the applicability of the exception in § 48-1114(2)(e)?

[10-12] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[15] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[16] Legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[17]

[13-16] An affirmative defense raises a new matter which, assuming the allegations of the complaint to be true, constitutes a defense to the merits of a claim.[18] We have described an affirmative defense as one that generally avoids, rather

---

[14] Brief for appellee at 21.

[15] *Johnson v. City of Omaha, ante* p. 402, 23 N.W.3d 420 (2025).

[16] *Dirt Road Development v. Hirschman*, 316 Neb. 757, 7 N.W.3d 438 (2024).

[17] See *Johnson, supra* note 15.

[18] See, *Haffke, supra* note 13; *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019); *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

than negates, the plaintiff's prima facie case.[19] An affirmative defense must be raised in the party's responsive pleading to be considered in the trial court and on appeal.[20] As we have explained, "The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so, they cannot recover upon mere argument alone."[21]

[17] When considering whether the Legislature intended the provisions of § 48-1114(2)(e) to constitute an affirmative defense, additional rules of statutory construction inform our analysis. The U.S. Supreme Court has long relied on a general rule of statutory construction that "the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."[22] This rule of construction is based on "the familiar principle that [w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it."[23] More specifically, "when a statute has exemptions laid out apart from the prohibitions, and the exemptions expressly refe[r] to the prohibited conduct . . . , the exemptions ordinarily constitute affirmative defense[s] that are entirely the responsibility of the party raising them."[24] Because this "longstanding convention is part of the backdrop against which the Congress writes laws,"[25] the

---

[19] *Haffke, supra* note 13; *Salem Grain Co., supra* note 18.

[20] See *Funk, supra* note 13. See, also, § 6-1108(c)(1).

[21] *Funk, supra* note 13, 294 Neb. at 728, 885 N.W.2d at 11.

[22] *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701, 145 S. Ct. 1020, 221 L. Ed. 2d 591 (2025) (internal quotation marks omitted). Accord *NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 121 S. Ct. 1861, 149 L. Ed. 2d 939 (2001); *Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 68 S. Ct. 822, 92 L. Ed. 2d 1196 (1948).

[23] *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 91, 128 S. Ct. 2395, 171 L. Ed. 2d 283 (2008) (internal quotation marks omitted).

[24] *Cunningham, supra* note 22, 604 U.S. at 701 (internal quotation marks omitted).

[25] *Meacham, supra* note 23, 554 U.S. at 91.

U.S. Supreme Court follows this rule of construction absent "compelling reasons to think that Congress meant to put the burden of persuasion on the other side."[26]

[18,19] Nebraska has long followed a similar rule when construing statutes to determine whether an exception presents a matter to be proved by the defense or disproved by the plaintiff. More than a century ago, we endorsed the common-law rule of statutory construction that "'[w]here a party relies upon a statute which contains an exception in the enacting clause, such exception must be negatived; but where the exception occurs in a proviso or in a subsequent section of the act, such exception is matter of defense and need not be negatived.'"[27] And like the U.S. Supreme Court, Nebraska courts presume the Legislature "is conversant with the established rules of statutory construction"[28] and considers such rules when enacting legislation.

Applying these rules of construction, we first consider the structure of § 48-1114. The enacting clause is contained in subsection (1) of § 48-1114, which currently identifies four unlawful employment practices in subdivisions (1)(a) through (d). As relevant here, subdivision (1)(d) provides that it shall be an unlawful employment practice to discriminate against any employee because he or she

> has inquired about, discussed, or disclosed information regarding employee wages, benefits, or other compensation. This subdivision (d) shall not apply to instances in which an employee who has authorized access to the information regarding wages, benefits, or other compensation

---

[26] *Id.*, 554 U.S. at 91-92.

[27] *Cram v. Chicago, B. & Q. R. Co.*, 85 Neb. 586, 589, 123 N.W. 1045, 1046 (1909).

[28] *Id.* at 592, 123 N.W. at 1047. See, also, *Aguilar v. Valdez-Mendoza*, 318 Neb. 402, 409, 16 N.W.3d 130, 135 (2025) (recognizing that "[i]n enacting a statute, the Legislature . . . is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation").

of other employees as a part of such employee's job functions discloses such information to a person who does not otherwise have authorized access to such information, unless such disclosure is in response to a charge or complaint or in furtherance of an investigation, proceeding, hearing, or other action, including an investigation conducted by the employer.[29]

Because subdivision (1)(d) contains an exception within the enacting clause, that exception is one an employee must negate in an action alleging a violation of § 48-1114(1)(d). And though GOPC did not seek a directed verdict on the basis of the exception in § 48-1114(1)(d), we note the evidence established that Khaitov had access to the information about other employees' bonuses as part of his job functions, and there was no evidence that he disclosed such information to anyone who did not otherwise have authorized access to the information.

Subsection (2) of § 48-1114 is a proviso to the unlawful employment practice identified in subdivision (1)(d), and it contains six exceptions in subsections (2)(a) through (f). As relevant here, subsection (2)(e) provides that nothing in subdivision (1)(d) shall "[p]ermit an employee to discuss information regarding employee wages, benefits, or other compensation during working hours, as defined in existing workplace policies, or in violation of specific contractual obligations[.]"[30]

Because the exception in § 48-1114(2)(e) is found in a subsection that is separate from the enacting clause, Khaitov is correct that the exception in § 48-1114(2)(e) is a matter of defense that must be pled and proved by the employer.[31] This conclusion is supported not only by the structure of the statute and the common-law rule of statutory construction,

---

[29] § 48-1114(1)(d).

[30] § 48-1114(2)(e).

[31] See *Cram, supra* note 27.

but also by the fact that the exception in § 48-1114(2)(e) raises a new matter that avoids, rather than negates, a claim that the employer engaged in an unlawful employment practice under § 48-1114(1)(d).[32]

[20] We therefore hold that the exception in § 48-1114(2)(e) is an affirmative defense that an employer must both plead and prove in an action alleging a violation of § 48-1114(1)(d). Because the record on appeal confirms that GOPC failed to plead § 48-1114(2)(e) as an affirmative defense in its answer, that defense was waived and has no applicability to Khaitov's claim. Moreover, because GOPC did not raise the applicability of § 48-1114(2)(e) until after Khaitov rested his case in chief, this is not a case where GOPC can successfully claim the affirmative defense was tried by the express or implied consent of the parties under Neb. Ct. R. Pldg. § 6-1115(b)(2) (codified 2008) and should be treated as if it were raised in the pleadings. Having failed to plead the affirmative defense, GOPC waived it and should not have been permitted to raise the defense by argument alone.[33]

The trial court erred in granting GOPC's motion for directed verdict based on § 48-1114(2)(e), and we therefore reverse the order and remand the cause with directions to enter a judgment in conformity with the jury's verdict and to thereafter take up any timely posttrial motions filed by the parties.

### (b) Parties' Other Arguments

In addition to arguing over whether § 48-1114(2)(e) is an affirmative defense, the parties' appellate briefs present broader arguments about the proper scope and meaning of the language in § 48-1114(1)(d) and (2)(e). But having already determined that § 48-1114(2)(e) is an affirmative defense that was waived and therefore has no application to this case, disposition of this appeal does not

---

[32] See *Funk, supra* note 13.

[33] See *id.*

require that we more broadly construe the language of either § 48-1114(1)(d) or § 48-1114(2)(e), and we leave such matters for another day.[34]

[21] We also decline to address GOPC's argument that even if it was error to grant the directed verdict based on § 48-1114(2)(e), the order should nevertheless be affirmed "on the separate and independent ground"[35] that § 48-1114(1)(d) was not intended to "protect employees who ask for more money."[36] GOPC raised a similar argument in support of its motion for summary judgment, and the trial court rejected it. An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal for that argument to be considered.[37] GOPC has not cross-appealed to challenge the summary judgment ruling, and its motion for directed verdict at the close of all the evidence was based exclusively on the exception in § 48-1114(2)(e). Because GOPC's argument regarding the proper scope and construction of § 48-1114(1)(d) has not been preserved for appellate review, we do not address it.

### 3. Postverdict Procedure Was Improper

[22] Neither party challenges the unusual postverdict procedure followed by the court, but we choose to address it on plain error review. An appellate court always has the option to notice plain error that was not complained of at trial or on appeal but that is plainly evident from the record and is of such a nature that to leave it uncorrected would result

---

[34] See *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024) (noting appellate courts are not obligated to engage in analysis that is not necessary to adjudicate case and controversy before them).

[35] Brief for appellee at 23.

[36] *Id*. at 24.

[37] *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021); *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021).

in damage to the integrity, reputation, or fairness of the judicial process.[38]

To be clear, our plain error review is limited to the court's postverdict procedure and does not concern the court's preverdict decision to take the motion for directed verdict under advisement and submit the case to the jury. Deferring ruling on such a motion is a sound practice that is both contemplated by § 25-1315.02 and generally encouraged by appellate courts.[39] As one commentator explains:

> Even at the close of all the evidence, it may be desirable to refrain from granting a motion for [directed verdict] despite the fact that it would be possible for the district court to do so. If [a directed verdict] is granted and the appellate court holds that the evidence in fact was sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial [court] submits the case to the jury, even though [it] thinks the evidence insufficient, final determination of the case is expedited greatly. If the jury agrees with the trial court's appraisal of the evidence, and returns a verdict for the party who moved for judgment as a matter of law, the case is at

[38] See, e.g., *Jackson v. Rodriguez*, 318 Neb. 657, 18 N.W.3d 408 (2025); *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018); *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

[39] See, e.g., *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006) (observing that although trial courts are permitted to grant motions for judgment as matter of law at close of all evidence, they are "encouraged to submit the case to the jury, rather than granting such motions"); *Samson v. Riesing*, 62 Wis. 2d 698, 704, 215 N.W.2d 662, 665 (1974) (noting "where there is a motion for directed verdict, it is the better practice to reserve the ruling on the motion and submit the matter to the jury"). Accord 75A Am. Jur. 2d *Trial* § 785 at 405 (2018) ("[t]rial judges, faced with a motion for a directed verdict in doubtful cases, should submit all issues to the jury, reserving the prerogative of correcting the jury's verdict later on a motion for a judgment notwithstanding the verdict which saves needless retrials if, on appeal, the appellate court disagrees with the trial judge").

an end. If the jury brings in a different verdict, the trial
court can grant a renewed motion for judgment [notwith-
standing the verdict]. Then, if the appellate court holds
that the trial court was in error in its appraisal of the evi-
dence, it can reverse and order judgment on the verdict
of the jury, without any need for a new trial.

For this reason the appellate courts repeatedly have
said that it usually is desirable to take a verdict, and
then pass on the sufficiency of the evidence on a post-
verdict motion.[40]

Although the trial court's decision to take the motion for
directed verdict under advisement and submit the case to the
jury was entirely appropriate, the court and the parties misun-
derstood the effect of that decision under § 25-1315.02, and
that misunderstanding led to a postverdict procedure that was
fundamentally flawed and contrary to Nebraska statute. As
such, although we have already found reversible error in the
court's ruling on directed verdict, we take this opportunity
to address the proper procedure to be followed when a court
defers ruling on a motion for directed verdict and submits the
case to the jury.

Here, after submitting the case to the jury, the jury returned
a general verdict in Khaitov's favor, awarding monetary dam-
ages. No party contends there was any defect or irregularity
in the verdict form or in the manner of its return, and the jury
was discharged.[41] The clerk filed the verdict, but the court
did not thereafter order or enter judgment in conformity with
the verdict.[42] Instead, it advised the parties that the motion
for directed verdict was "still under advisement" and that
additional written and oral argument on the motion would be

---

[40] 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 2533 at 516-17 (3d ed. 2008).

[41] See Neb. Rev. Stat. § 25-1123 (Reissue 2016).

[42] See § 25-1313.

considered at a later date. Several weeks later, GOPC filed a motion asking for a ruling on the "Pending Motion for Directed Verdict," and a hearing was held, after which the court entered a written order granting the motion for directed verdict made at the close of all the evidence and dismissing the case in its entirety.

It is apparent from the procedure just described, and from the appellate record, that no one questioned the trial court's assertion that the preverdict motion for directed verdict was "still under advisement" after a verdict was returned; everyone assumed that because the motion had been taken under advisement, it had to be ruled upon before the court could decide whether to enter judgment in conformity with the verdict. But that assumption was incorrect, and it resulted in a postverdict procedure that was contrary to the governing statutes.

[23] First, the procedure failed to comply with § 25-1313, which governs the entry of judgment after a jury trial. Section 25-1313 provides that "[w]hen a trial by jury has been had, judgment must be ordered by the court and entered upon the record in conformity to the verdict, unless it is special, or the court orders the case to be reserved for future argument or consideration." Entering judgment in conformity with the verdict under § 25-1313 is a ministerial duty,[43] and we

---

[43] See, e.g., *Webber v. City of Scottsbluff*, 155 Neb. 48, 50 N.W.2d 533, (1951) (recognizing, under prior version of § 25-1313, that clerk had duty to render judgment in conformity with jury verdict once it was received and filed); *Crete Mills v. Stevens*, 120 Neb. 794, 797, 235 N.W. 453, 455 (1931) (noting that once jury verdict was returned, § 25-1313 imposed duty to enter judgment in conformity therewith and failure to do so "was the basis for the fundamental error that runs through this proceeding"). Accord *Thompson v. Church*, 13 Neb. 287, 289, 13 N.W. 626, 626–27 (1882) (stating that when jury verdict is received "it is the duty of the justice to render judgment thereon" and such justice "is required *immediately* to perform this duty") (emphasis in original).

have found plain error in a trial court's failure to comply with the directions of § 25-1313 or its alternatives.[44]

The parties agree that the trial court failed to order or enter judgment in conformity with the jury's verdict, but GOPC suggests the court nevertheless complied with § 25-1313 by treating the motion for directed verdict as "still under advisement" and setting the matter for later argument. To the extent GOPC contends that by taking the motion under advisement the court "order[ed] the case to be reserved for future argument or consideration,"[45] as permitted under § 25-1313, we cannot agree. No such order was entered by the court, and even if it had been, it would rest on the flawed assumption that when a court expressly reserves ruling on a motion for directed verdict made at the close of all the evidence and submits the case to the jury, it thereby preserves the preverdict motion for a postverdict ruling even without a timely motion for judgment notwithstanding the verdict. The procedure required by § 25-1315.02 does not support such an assumption.

Section 25-1315.02 states, in relevant part:

Whenever a motion for a directed verdict made at the close of all the evidence is denied *or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.* No later than ten days after the entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the moving party's motion for a directed verdict. If the motion is filed after the announcement of a verdict but before the entry of judgment, it shall be treated as filed after

---

[44] See *Northwestern Public Service Co. v. Juhl*, 177 Neb. 625, 129 N.W.2d 570 (1964).

[45] § 25-1313.

the entry of judgment and on the day thereof. If a verdict is not returned, within ten days after the jury is discharged a party who has moved for a directed verdict may move for judgment in accordance with the moving party's motion for a directed verdict.

(Emphasis supplied.) It appears the parties and the trial court understood the italicized language quoted above to permit "later determination of the legal questions raised" on a preverdict motion for directed verdict without the need for a timely filed postverdict motion for judgment notwithstanding the verdict. Again, this understanding is incorrect. The italicized language above merely reflects what one legal commentator has described as a "legal fiction," explaining:

In effect, [§ 25-1315.02] creates the legal fiction that the court is not re-examining the facts that were tried by the jury when it grants a motion for judgment notwithstanding the verdict. It is instead ruling on the legal issue of whether the evidence is such that a reasonable jury could only come to one conclusion. . . .

. . . [U]nder the fiction, the post-verdict motion is a request for a ruling on the pre-verdict motion.[46]

[24-26] We have consistently said that under the terms of § 25-1315.02,

"where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, *and a motion for judgment notwithstanding the verdict is duly filed*, it is the duty of the court to

---

[46] John P. Lenich, Nebraska Civil Procedure § 30:21 at 1455-56 (2025). See, also, 9B Wright & Miller, *supra* note 40, § 2522 at 228 (observing that similar language in Fed. R. Civ. P. 50(b) merely "supplie[s] a fiction to replace the [necessity of an] express reservation").

sustain the motion and render judgment in accordance with the motion for a directed verdict.[47]”

The requirement to file a timely motion for judgment notwithstanding the verdict is not removed just because the court expressly reserved ruling on a motion for directed verdict before submitting the case to the jury. To the contrary, under the framework of § 25-1315.02, even when a trial court expressly reserves ruling on a motion for directed verdict at the close of all the evidence and submits the matter to the jury, a timely motion for judgment notwithstanding the verdict is required for a court to engage in a later determination of the legal questions raised in an earlier motion for directed verdict. Other courts agree with this interpretation.

In *Gilbert v. Cliche*,[48] the Maine Supreme Court considered the effect of a court rule similar to § 25-1315.02.[49] The trial court in *Gilbert* submitted the case to the jury without ruling on the defendant's motion for directed verdict made at the close of all the evidence. After the jury returned a verdict for the plaintiff, and without the defendant's having filed a motion for judgment notwithstanding the verdict, the court stated it had a “‘duty now to rule on the Defendant's motion for a directed verdict,’”[50] and it sustained the motion and entered judgment in favor of the defendant. This procedure was found to be erroneous on appeal, with the Maine Supreme Court reasoning:

> The presiding Justice believed, as is evident from his remarks, that since he had submitted the case to

---

[47] *Schleusener v. Nebraska Tractor & Equipment Co.*, 187 Neb. 648, 652–53, 193 N.W.2d 438, 440 (1972) (emphasis supplied). Accord *Corbitt v. Omaha Transit Co.*, 162 Neb. 598, 77 N.W.2d 144 (1956). See, *Weichel v. Lojka*, 185 Neb. 819, 179 N.W.2d 112 (1970); *Buick v. Stoehr*, 172 Neb. 629, 111 N.W.2d 391 (1961).

[48] *Gilbert v. Cliche*, 379 A.2d 717 (Me. 1977).

[49] See Me. R. Civ. P. 50(b).

[50] *Gilbert, supra* note 48, 379 A.2d at 719 (emphasis omitted).

the jury without ruling on defendant's motion for a directed verdict in her favor, that motion remained open and in need of being ruled upon as such, notwithstanding the supervention of a jury verdict deciding in favor of the plaintiff.

This was an erroneous view. It overlooked that Rule 50(b) M.R.Civ.P. plainly requires, in addition to the pre-verdict motion for directed verdict, that a post-verdict motion be filed invoking the power of the Court to order entry of judgment notwithstanding the verdict returned by the jury.[51]

The appellate court in *Gilbert* concluded the trial judge violated Me. R. Civ. P. 50(b) by entering "judgment for the defendant in the face of a verdict in favor of [the] plaintiff without having before him a separate post-verdict motion by [the] defendant asking that the jury verdict be set aside."[52] And it found the error was prejudicial to the plaintiff because it "impaired procedural rights guaranteed" under Me. R. Civ. P. 50(b).[53]

The U.S. Supreme Court reached a similar conclusion in *Johnson v. New York, N. H. & H. R. Co.*[54] The defendant in *Johnson* moved for a directed verdict at the close of all the evidence, and the trial court reserved ruling on the motion and submitted the case to the jury. The jury returned a verdict for the plaintiff and the court entered judgment accordingly. The defendant thereafter filed a postverdict motion but did not file a motion for judgment notwithstanding the verdict under Fed. R, Civ. P. 50(b). The trial court entered an order overruling the defendant's postverdict motion, and in the same order, purported to overrule the preverdict motion for

---

[51] *Id.*

[52] *Id.* at 721.

[53] *Id.*

[54] *Johnson v. New York, N. H. & H. R. Co.*, 344 U.S. 48, 73 S. Ct. 125, 97 L. Ed. 77 (1952).

directed verdict on which it had previously reserved ruling. The defendant appealed, and the U.S. Court of Appeals for the Second Circuit reversed, reasoning that the motion for directed verdict should have been granted by the trial court in its postverdict ruling. The U.S. Supreme Court determined that because no timely motion for judgment notwithstanding the verdict had been filed, the trial court had no power to grant the directed verdict. In doing so, the Court rejected the suggestion that because the trial judge had reserved ruling on the motion for directed verdict, there was no need to file a timely motion for judgment notwithstanding the verdict, reasoning:

> Rule 50(b) . . . mak[es] it wholly unnecessary for a judge to make an express reservation of his decision on a motion for directed verdict. The rule itself made the reservation automatic. A court is always "deemed to have submitted the action to the jury subject to a later determination" of the right to a direct verdict *if a motion for judgment notwithstanding the verdict is made "within 10 days after the reception of a verdict . . . ."* This requirement of a timely application for judgment after verdict is not an idle motion. This verdict solves factual questions against the post-verdict movant and thus emphasizes the importance of the legal issues. The movant can also ask for a new trial either for errors of law or on discretionary grounds. The requirement for timely motion after verdict is thus an essential part of the rule, firmly grounded in principles of fairness. . . . Poor support for its abandonment would be afforded by the mere fact that a judge makes an express reservation of a decision which the rule reserves regardless of what the judge does.[55]

[27] Like the rules considered by the courts in *Johnson* and *Gilbert*, the plain language of § 25-1315.02 makes it wholly unnecessary for a trial court to expressly reserve the

---

[55] *Id*., 344 U.S. at 53 (emphasis supplied).

decision on a motion for directed verdict made at the close of all the evidence, because the statute makes the reservation automatic, subject to the filing of a motion for judgment notwithstanding the verdict no later than 10 days after the entry of judgment. In other words, it is the timely filing of a motion for judgment notwithstanding the verdict that permits the trial court to determine the legal questions raised by the earlier motion for directed verdict, not the fact that the court reserved ruling on the motion. This also highlights the importance of the duty to enter judgment in conformity with the jury verdict as required by § 25-1313, because the 10-day period under § 25-1315.02 runs from the entry of judgment and not the announcement of a verdict.[56]

In summary, although it was appropriate for the trial court to withhold ruling on the motion for directed verdict and submit the case to the jury, the procedure it followed once the jury returned its verdict was erroneous. Instead of withholding the entry of judgment and treating the motion for directed verdict as something that was still under advisement, the court should have entered judgment in conformity with the jury's verdict as required by § 25-1313, taken up any timely postverdict motions filed by the parties, and revisited the legal issue raised by the motion for directed verdict only if a timely motion for judgment notwithstanding the verdict was filed as required by § 25-1315.02.

Our plain error review shows that the postverdict procedure followed here was erroneous, but a finding that it amounted to plain error would be warranted only if leaving that procedure uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[57] And because

---

[56] See § 25-1315.02 ("[i]f the motion is filed after the announcement of a verdict but before the entry of judgment, it shall be treated as filed after the entry of judgment and on the day thereof").

[57] See, *Jackson, supra* note 38; *Torres, supra* note 38; *Kantaras, supra* note 38.

we have already found reversible error in the directed verdict ruling itself, the flawed procedure utilized to make that ruling will not be left uncorrected. To the contrary, the appellate disposition already announced above, and the directions on remand, will effectively correct the erroneous postverdict procedure too. So although our plain error review serves to clarify the proper procedure to follow when a court defers ruling on a motion for directed verdict made at the close of all the evidence and submits the case to the jury, disposition of this appeal does not warrant a finding of plain error.

## V. CONCLUSION

As a matter of statutory construction, we hold that the exception in § 48-1114(2)(e) is an affirmative defense that an employer must both plead and prove in an action alleging a violation of § 48-1114(1)(d). Because the record on appeal confirms that GOPC failed to plead § 48-1114(2)(e) as an affirmative defense, the trial court erred in granting GOPC's motion for directed verdict based on § 48-1114(2)(e), and we therefore reverse that ruling and remand the cause with directions to enter judgment in conformity with the jury's verdict and for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., not participating.